(No. 52800

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. GEORGE W. DEL VECCHIO, Appellant.

*Opinion filed February 22, 1985.—Rehearing denied March 29, 1985.*

420

SIMON, J., concurring in part and dissenting in part.

Daniel D. Yuhas, Deputy Defender, and David P. Bergschneider, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark Rotert, Assistant Attorney General, of Chicago, and Michael E. Shabat and Sara Dillery Hynes, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

In an indictment returned in the circuit court of Cook County, defendant, George W. Del Vecchio, was charged with murder (Ill. Rev. Stat. 1975, ch. 38, par. 9—1(a)(2)), rape (Ill. Rev. Stat. 1975, ch. 38, par. 11—1), deviate sexual assault (Ill. Rev. Stat. 1975, ch. 38, par. 11—3), and burglary (Ill. Rev. Stat. 1975, ch. 38, par. 19—1). Following a jury trial, defendant was found guilty of each of the charged offenses. In a hearing requested by the People, the jury found that there existed one or more of the factors set forth in section 9—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(b)) and that there were no mitigating factors sufficient to preclude a sentence of death. Defendant was sentenced to death, and the sentence was stayed (87 Ill. 2d R. 609(a)) pending appeal to this court (Ill. Const. 1970, art. VI, sec. 4(b); 87 Ill. 2d R. 603). The defendant was also sentenced to 15 years for rape, 6 years for deviate sexual assault, and 7 years for burglary.

At trial, Karen Canzoneri testified that she and her six-year-old son, Tony, occupied the first-floor and attic levels in a two-flat building in Chicago. On the evening of December 22, 1977, Mrs. Canzoneri, Tony, and Santo Falcone had driven to Lombard, where Mrs. Canzoneri purchased a stereo receiver. When they returned to Chicago they stopped at a tavern, and while there they saw defendant and his wife, Rose, both of whom they knew. When they left the tavern approximately a half hour later, Rose Del Vecchio came with them. After assembling the stereo which Mrs. Canzoneri had purchased, Falcone put Tony to bed downstairs. When Falcone returned upstairs, defendant was with him. Defendant brought with him a briefcase containing marijuana which he, Falcone, and Rose Del Vecchio smoked. After ap-

proximately an hour, Mrs. Canzoneri asked them to leave.

At about dawn, Mrs. Canzoneri was awakened when she heard footsteps. When she asked who was there, defendant identified himself, stating he "wanted to talk." Mrs. Canzoneri attempted to shoot defendant with a pistol which Falcone had given her, but defendant slapped it out of her hand. Defendant would not permit her to check on Tony, responding that Tony was sleeping peacefully. When she attempted to leave the room to check on her son, defendant pushed her back on the bed, kissed her face, breasts, vagina, and legs, and despite her request to stop, had intercourse with her. During the intercourse, she heard a telephone ring. She asked defendant to let her answer it because it was probably her mother, who lived across the street. She told him that unless she answered the telephone, her mother would come over. Defendant did not respond. Mrs. Canzoneri could not determine which of the three telephones in the apartment was ringing. The ringing stopped. The telephone rang again and defendant went downstairs. Mrs. Canzoneri looked for the telephone but could find only the cord. The telephone, severed from the cord, was found later when the police searched the premises. She ran downstairs and across the street to her mother's house. Mrs. Canzoneri told her mother she had been raped and called the police.

Chicago police officer William Sacco testified that five police officers responded to the call of a rape in progress. Mrs. Canzoneri told the officers that there was a man with a gun in her house, that she knew the man and that it was defendant. After searching the first floor, the officers went up to the attic bedroom. Alerted by the sound of snow crunching outside the window, Officer Sacco saw defendant crawling on the roof and ordered him inside. Defendant responded by blurting, "I

didn't kill nobody." Defendant was arrested, given Miranda warnings, and handcuffed. Officer Richard Elmer testified that, after searching various areas of the building and interviewing a neighbor, he and other officers discovered a crawl space located under the stairs. They opened the door and found the body of Tony Canzoneri. Later examination showed that the boy's trachea, carotid artery, jugular vein and vagus nerve were completely severed, and the third and fourth cervical vertebrae were fractured.

It appears from the testimony that when she entered her home earlier that evening Mrs. Canzoneri left her purse on the kitchen table. Her purse, among other things, contained her keys, and a credit card. When defendant was taken into custody, the credit card was in his possession.

Defendant contends first that he did not receive effective assistance of counsel. The record shows that prior to trial defense counsel had indicated that the defense would be insanity. Counsel attempted to determine whether the circuit court would permit the People to rebut the insanity defense with evidence of defendant's 1965 convictions for murder, robbery and attempted robbery. The circuit court stated that until the evidence of insanity was presented it could not determine whether evidence of the prior convictions was relevant. Defendant contends that defense counsel should have made an offer of proof concerning the evidence which would be presented and that the failure to do so constituted ineffective assistance of counsel. Defendant argues that because of the failure to make an offer of proof counsel did not learn whether the circuit court would exclude evidence of the prior convictions and therefore were unable to make an informed tactical decision concerning the defense to be presented. Defendant contends that, as a result, counsel withdrew a meritorious insanity defense

and instead relied on an intoxication defense for which the evidence did not present a *prima facie* case.

The People contend that defendant received excellent representation. They state that defense counsel interviewed 30 to 40 witnesses, filed numerous pretrial motions, obtained court-ordered psychiatric examinations of defendant, vigorously cross-examined the People's witnesses, and called 24 witnesses to testify on behalf of defendant. The People further note that prior to the People's cross-examination of Dr. Stipes, who had testified concerning the effect of the ingestion of PCP, defense counsel, *in limine*, indicated they would tender an insanity instruction. The court offered defense counsel a choice of an insanity instruction, in which event the People would be permitted to rebut the defense with evidence of defendant's prior convictions, or forgoing an insanity instruction, thereby precluding introduction of evidence of the prior convictions. It was at this point, and for this reason, that defense counsel elected to withdraw the insanity defense and proceed on an intoxication theory.

In *People v. Albanese* (1984), 104 Ill. 2d 504, after reviewing the Supreme Court's recent opinion in *Strickland v. Washington* (1984), 466 U.S. ___, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and this court's opinion in *People v. Greer* (1980), 79 Ill. 2d 103, the court said:

> "Although we do not foresee that application of the *Strickland* rule will produce results that vary significantly from those reached under *Greer*, we hereby adopt the Supreme Court rule for challenges to effectiveness of both retained and appointed counsel (see *People v. Royse* (1983), 99 Ill. 2d 163, 170) and reject the single-component test of *Twomey*.
>
> To assist lower courts, the Supreme Court also offered the following guidelines for applying its two-component standard: '[A] court need not determine whether counsel's performance was deficient before examining the prejudice

suffered by the defendant as a result of the alleged deficiencies. *** If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' 466 U.S. ____, ____, 80 L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2069-70." 104 Ill. 2d 504, 526-27.

On this record, we are unable to say that defendant was prejudiced by counsel's alleged ineffectiveness. Clearly, defendant's contention that the evidence presented with respect to the intoxication defense failed to establish a *prima facie* case is without merit because an instruction was given on the intoxication defense and the jury chose to reject it. Obviously the jury also rejected the evidence of defendant's insanity adduced at the sentencing hearing because it failed to find the existence of the mitigating factor that "defendant was under the influence of extreme mental or emotional disturbance" (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(c)(2)). Thus, we are unable to say that counsel's performance caused substantial prejudice to the defendant without which the result of the trial would probably have been different.

Defendant contends next that he was denied a fair trial because of the assistant State's Attorneys' personal attacks on defense counsel and their improper argument that the defense was a fraud. In the cross-examination of a police officer, defense counsel attempted to show that the officer had refused to discuss the case with one of defendant's attorneys. On redirect examination the assistant State's Attorney asked the officer if it was "his practice to talk to defense attorneys, people who represent murderers?" In closing argument the assistant State's Attorney asserted that the jury had heard "many different defenses," with the defenses shifting first to one and then back to the other. Comment was made to the effect that the insanity defense had been withdrawn "because it wasn't working." In several instances objec-

tions were sustained, and in one instance a motion for mistrial was denied.

It would have been better if the comments of which defendant complains had not been made, but on this record we conclude that the comments did not result in prejudice which requires reversal. Defendant has not denied that he committed the homicide, and the context in which the improper argument was made is unlikely to have influenced the jury in deciding the crucial question whether defendant's intoxication from the ingestion of PCP rendered him unable to form the intent necessary to commit the offense.

As the court said in *People v. Smothers* (1973), 55 Ill. 2d 172:

"The character and scope of argument to the jury is left very largely to the trial court, and every reasonable presumption must be indulged in that the trial judge has performed his duty and properly exercised the discretion vested in him. (*North Chicago Street Ry. Co. v. Cotton*, 140 Ill. 486.) The general atmosphere of the trial is observed by the trial court, and cannot be reproduced in the record on appeal. The trial court is, therefore, in a better position than a reviewing court to determine the prejudicial effect, if any, of a remark made during argument, and unless clearly an abuse of discretion, its ruling should be upheld." (55 Ill. 2d 172, 176.)

We find no such abuse of discretion here.

Defendant contends next that the circuit court committed reversible error in permitting the People to introduce irrelevant testimony that defendant had committed adultery and to argue, without any basis in the evidence, that defendant and his wife engaged in deviate sexual activity. The testimony to which this contention refers was elicited during the cross-examination of defendant's wife, Rose Del Vecchio, who stated that Mary Blackstone had lived in their home and that during that period she had slept with defendant. The reference to improper pro-

secutorial comment concerns a remark to the effect that defendant, his wife, and another woman were in bed together. This comment was in turn based on an attempt to elicit from Mrs. Del Vecchio the admission that there had been a lesbian relationship between the witness and Ms. Blackstone.

In the context of the entire record it is difficult to see that the relationship of either defendant or his wife with Ms. Blackstone was material to the issues in the case, but an argument can be made that in view of the wide-ranging direct testimony of Mrs. Del Vecchio the cross-examination concerning defendant's adultery with Ms. Blackstone may have been proper. In our opinion, however, neither question warrants lengthy analysis or discussion. Defendant's evidence shows that he was an admitted narcotics dealer, a regular user of PCP, and on the night of the occurrence in question, he asserts that he was so completely intoxicated by reason of the ingestion of PCP that he has no recollection of what occurred. In view of those circumstances we conclude that evidence of his adultery with Ms. Blackstone or the possibility that the jury may have concluded there was a lesbian relationship between defendant's wife and Ms. Blackstone would have had no prejudicial effect on the jury. This was not a situation where defendant denied the commission of the offenses; the only issue involving defendant's credibility was whether he was intoxicated at the time of the homicide. Under the circumstances we hold that if any error was committed, it was, beyond a reasonable doubt, harmless.

Defendant contends next that the circuit court erred in refusing to grant a mistrial or to excuse veniremen who overheard a juror state her personal opinion of the accused. Defendant contends that the circuit court should have interrogated the remaining veniremen concerning the effect of the remark. Upon commencement

of *voir dire*, the court instructed the prospective jurors that defendant was presumed innocent, that this presumption would be overcome only by proof of guilt beyond a reasonable doubt, and that they were to base their decision solely on the evidence presented at trial. The court then posed several questions to the prospective jurors collectively, regarding whether any had discussed the case. The court instructed them to answer by standing. If a prospective juror stood he would then be examined individually by the court. Following that questioning period, jurors were called to the jury box 12 at a time and examined individually in panels of four. One of the prospective jurors said she had read about and discussed the case. When asked whether she had reached an opinion of defendant's guilt, she responded, "I think the guy shouldn't be out walking the streets." The court then excused all five prospective jurors who had previously responded that they had knowledge of the case through pretrial publicity.

While our system of jurisprudence requires the participation of fair and impartial jurors, it is not necessary that they be totally ignorant of the facts of the case before they assume their roles as jurors. (*Irvin v. Dowd* (1961), 366 U.S. 717, 722, 6 L. Ed. 2d 751, 756, 81 S. Ct. 1639, 1642.) The court excused those who had responded that they had previous knowledge of the case. The remaining veniremen who heard the comment had not otherwise heard about the case. We are unable to say that because of this single, isolated comment the jurors were unable to reach a verdict based solely on the evidence.

Defendant has also argued that the systematic exclusion of veniremen opposed to the death penalty denied him his right to a jury drawn from a fair cross-section of the community and resulted in a jury biased toward the prosecution. We have considered and rejected this latter

contention that qualifying a jury according to the principles of *Witherspoon v. Illinois* (1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770, results in a jury biased in favor of conviction (*People v. Lewis* (1981), 88 Ill. 2d 129, 147, *cert. denied* (1982), 456 U.S. 1011, 73 L. Ed. 2d 1308, 102 S. Ct. 2307) and decline to reconsider it here. Implicit in that holding was our conclusion that a jury chosen in accordance with the principles of *Witherspoon* does not deny defendant a jury drawn from a fair cross-section of the community.

We consider next defendant's contention that his sentence must be vacated because it was imposed by a jury which was selected in violation of the principles established in *Witherspoon v. Illinois* (1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770. In *Witherspoon*, the Supreme Court held that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. The court said:

> "Unless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it simply cannot be assumed that that is his position." (391 U.S. 510, 516 n.9, 20 L. Ed. 2d 776, 781-82 n.9, 88 S. Ct. 1770, 1774 n.9.)

Defendant contends that one juror was improperly excused during *voir dire* in violation of the standard set forth in *Witherspoon*. The following colloquy, in pertinent part, occurred:

> "THE COURT: *** Now, with respect to— I asked some questions with respect to the juror's views on the death penalty.
>
> Is there anyone here who feels that— who feels that after you— if you sat on a jury that found a defendant

guilty of murder, is there anyone here who feels that he or she would automatically set the penalty at death after a— after a finding of guilty of murder?

(No responses.)

THE COURT: Okay, yes, sir.

PROSPECTIVE JUROR RADEK: Russell Radek, 397. You know, I thought about it last night, you know, about the statement, and the death penalty, and I just don't think I— that I could do that.

\* \* \*

THE COURT: Is your feeling such that no matter what the circumstances, no matter what the background of the defendant is, is your feeling such that you consider a set of facts under which you would consider signing— consider signing a verdict affixing the punishment of death?

PROSPECTIVE JUROR RADEK: I don't think I have that right to do that."

Defendant argues that "at no time did Mr. Radek make it unmistakably clear that he would vote against the death penalty regardless of the evidence." The circuit court is in a superior position to ascertain the meaning a venireman intends to convey. In our opinion the standards of *Witherspoon* were met and the prospective juror's inclusion of "I think" did not render his answers ambiguous. We are persuaded that regardless of what the evidence showed, he would have voted against the imposition of the death penalty, and we conclude that the circuit court did not err in excusing him.

Defendant contends next that the circuit court erred in holding a single hearing at which the jury heard evidence of statutory aggravating factors along with evidence of mitigation and nonstatutory aggravating factors. Defendant contends that this resulted in prejudice requiring reversal. He points out that with reference to the statutory aggravating factors the People's burden of proof is beyond a reasonable doubt, and the rules of evi-

dence apply; whereas on the question whether the mitigating factors are sufficient to preclude a death sentence, information is admissible without regard to the rules of evidence, and the statute specifies no burden of proof. Defendant argues that evidence of defendant's prior convictions for armed robbery and attempted armed robbery, which were introduced as evidence of nonstatutory aggravating factors, were irrelevant to the question of the statutory aggravating factors.

While we do not exclude the possibility that a factual situation might arise which would require a hearing bifurcated in the manner for which defendant contends, we are of the opinion that no such bifurcation was required here, and that defendant was not prejudiced. The two statutory aggravating factors alleged were that the defendant had been convicted of two intentional or premeditated murders, and that the murder of Tony Canzoneri occurred in the course of the commission of another felony. We fail to perceive in what manner the evidence of nonstatutory aggravating matters could have affected the verdict of the jury on these two questions. The testimony shows that, in the 1965 murder of which defendant was convicted, he fired several shots at the deceased while he lay helpless on the sidewalk. With respect to the other aggravating factor, the evidence is overwhelming of defendant's guilt of rape and deviate sexual assault. On the record before us we conclude that defendant's contentions are without merit.

Defendant contends next that the circuit court erred in admitting evidence at the sentencing hearing of his allegedly involuntary confession and subsequent guilty plea to the 1965 murder of Fred Christiansen without first conducting a hearing on his motion to suppress the confession on voluntariness grounds. While defendant contests the voluntariness of his inculpatory statement, he does not contend that the guilty plea was involuntarily

entered. This court has held that "a constitutional right, like any other right of an accused, may be waived, and a voluntary plea of guilty waives all errors or irregularities that are not jurisdictional." (*People v. Brown* (1969), 41 Ill. 2d 503, 505.) Thus, the issue was waived by the voluntary plea of guilty.

Defendant next contends that the circuit court improperly sustained the People's objections to evidence which would have shown the manner in which defendant had helped other persons. Defendant argues that the evidence was relevant to mitigation and to show his potential for rehabilitation. The first ruling of which defendant complains occurred during the following exchange between defense counsel and defendant's half-sister, Laura Rosiles:

"MR. QUEENEY [defense counsel]: In what ways would he help those men in jail?

LAURA ROSILES [half-sister]: Well, I talked to Howie. From what I understand he was suffering—

MR. THEOBALD [assistant State's Attorney]: Objection.

THE COURT: Sustained."

The defense also presented testimony of Marilyn Berg that defendant had helped her oldest son in his problems with the police, and had talked to her about her husband's problems. The second allegedly erroneous ruling occurred during the following colloquy:

"MR. QUEENEY [defense counsel]: Did George ever talk to you about your husband?

A: Yes, he did.

Q: What kind of problems does your husband have?

MR. OBBISH [prosecuting attorney]: Objection, Judge.

THE COURT: Objection sustained."

As the People point out, defense counsel was at no time precluded from eliciting testimony regarding the help defendant offered to these men. In the first instance, the

circuit court properly sustained an objection to the witness' nonresponsive answer. In the second instance, it correctly sustained the objection to defense counsel's irrelevant questions regarding the nature of Mrs. Berg's husband's problems. There was no offer of proof concerning the evidence sought to be introduced, and absent such offer we are unable to review the matter.

Defendant contends next that the People improperly introduced irrelevant and prejudicial evidence that Fred Christiansen, the 1965 murder victim, was survived by a spouse and a child. At the death penalty hearing, during the assistant State's Attorney's interrogation of a Chicago police officer, the following ensued:

"Q: And while you were at the Belmont Hospital, did you have occasion to see Helen and Geraldine Christiansen?

A: Yes, I did.

Q: And did they make an identification of their husband and their father at the Belmont Hospital?

A: Yes, they did."

The People respond that this testimony was relevant for the purpose of showing the victim's identity. Defendant contends that it cannot be argued that this testimony was offered for the purpose of identification because the victim had already been identified by Officer Cavanaugh, who had appeared at the scene and who testified that he knew Christiansen. There was no further interrogation on the matter, and we conclude that the error, if any, was harmless.

The next reference to the victim's family to which defendant objects occurred during closing argument, when the assistant State's Attorney commented:

"Mrs. Christiansen in 1965 lost her husband, and for that life she got the short end of the stick. Mrs. Christiansen got shortchanged by the criminal justice system in Illinois, because for that life, for that precious life, eight

years was the penalty that he paid for that, and not only did Mrs. Christiansen suffer from that, but now the Canzoneri family has had to suffer from that."

Citing *People v. Bernette* (1964), 30 Ill. 2d 359, defendant argues that, despite the fact that defense counsel did not object, the reference to the victims is prejudicial error requiring reversal. In *Bernette* the court held that the evidence relating to the victim's family had no relevance to guilt or innocence. What occurred here, both in the testimony and in argument, is clearly distinguishable from *Bernette*. In *Bernette* the People elicited detailed testimony concerning the deceased's surviving family and commented on it in argument. Moreover, although remarks regarding a deceased's family are generally improper, we have held that where, as here, the comments occurred during the sentencing hearing, the ordinary rules controlling the admissibility of evidence do not apply. (*People v. Davis* (1983), 95 Ill. 2d 1, 37.) In *Davis*, the defendant's death sentence was upheld despite similar comments. (See also *People v. Free* (1983), 94 Ill. 2d 378, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 175, 104 S. Ct. 200.) Furthermore, the jury was fully aware of the prior murder and the circumstances surrounding it, and we doubt that its verdict was influenced by the argument.

We consider next defendant's argument that certain comments made by the People during both opening and closing arguments improperly referred to the possibility of defendant's parole in the event the jury chose not to impose the death sentence. During opening argument, the assistant State's Attorney argued:

"The so-called experts who are in charge of the criminal justice system decided that Mr. Christiansen's life was worth fourteen to twenty years. That's the sentence that George Del Vecchio received for the murder of Mr. Christiansen. Well, you can see that if George Del Vecchio

from 1965 had served even the minimum of that sentence, fourteen years, Tony Canzoneri would be alive today and looking forward to Thanksgiving tomorrow. The so-called experts have said, let George Del Vecchio out after serving eight years in custody, various juvenile facilities and then the Illinois State Penitentiary. They decided George Del Vecchio had been rehabilitated. Those decisions from those so-called experts cost Tony Canzoneri his life."

During closing arguments, he argued:

"You have a right, ladies and gentlemen, to protect yourself from people like George Del Vecchio. You should demand that you be protected from people like George Del Vecchio.

You must, you can't leave it up to the experts. You can't trust the experts. People like George Del Vecchio—

MR. QUEENEY: Objection.

THE COURT: He may argue.

MR. OBBISH: —can fool the experts. He's a manipulator, he's a malingerer, he fools other people, he uses other people.

Don't put the decision on somebody else, because you can't count on them, because you can bet a few years from now there will be another expert who will be willing to come along and say he's fine."

Citing *People v. Walker* (1982), 91 Ill. 2d 502, defendant contends that because these comments were made during the sentencing hearing he is entitled to a new sentencing hearing. In *Walker* the court noted that the possibility of parole was a factor in at least one juror's mind because the circuit judge had received a note from the jury asking for clarification of the possibility of parole. We find *Walker* distinguishable in that there is no evidence that the possibility of parole was a factor considered in the jury's deliberations. Further, the assistant State's Attorney accurately described the jury's sentencing choices. As the Supreme Court said, "[s]urely the [defendant] cannot argue that the [United States] Consti-

tution prohibits the State from accurately characterizing its sentencing choices." (*California v. Ramos* (1983), 463 U.S. 992, 1005 n.19, 77 L. Ed. 2d 1171, 1183 n.19, 103 S. Ct. 3446, 3455 n.19.) The assistant State's Attorney was attempting to "inform the jury of the nature of the sentence of imprisonment that may be imposed, including its implication with respect to possible release upon parole, if the jury verdict is against sentence of death." (463 U.S. 992, 1009 n.23, 77 L. Ed. 2d 1171, 1186 n.23, 103 S. Ct. 3446, 3457 n.23.) We cannot say, in the circumstances shown here, defendant was denied a fair trial. *People v. Williams* (1983), 97 Ill. 2d 252, 305-06.

Defendant contends next that psychiatrists, called by the People at the sentencing hearing, were improperly allowed to testify as to the opinions of nontestifying experts. Dr. Richard Rogers, a clinical psychologist, and Dr. James Cavanaugh, a psychiatrist called by the People in rebuttal, testified that, in their opinions, defendant was sane at the time of the offenses, was a sociopath and malingerer who at the time of the offense was not suffering from extreme mental or emotional distress. The testimony of which defendant complains consists of statements that other psychiatrists who had examined defendant reached conclusions consistent with those of Drs. Rogers and Cavanaugh. Citing *People v. Ward* (1975), 61 Ill. 2d 559, and *Wilson v. Clark* (1981), 84 Ill. 2d 186, defendant argues that in permitting these experts to testify concerning the opinions of nontestifying witnesses, the circuit court, in violation of defendant's sixth amendment right of confrontation, erroneously permitted the jury to consider the opinions of the nontestifying psychiatrists. He argues that although under *Ward* and *Wilson* an expert may state an opinion based on the report of another witness it was error to permit him to state the opinion of the other witness. The evidence was admitted at the sentencing hearing pursuant

to section 9—1(e) (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(e)), which provided:

"During the proceeding any information relevant to any of the factors set forth in Subsection (b) may be presented by either the State or the defendant under the rules governing the admission of evidence at criminal trials. Any information relevant to any additional aggravating factors or any mitigating factors indicated in Subsection (c) may be presented by the State or defendant regardless of its admissibility under the rules governing the admission of evidence at criminal trials. The State and the defendant shall be given fair opportunity to rebut any information received at the hearing."

This court has held that this section suspends the rules of evidence so that the jury may have all relevant information before it. (*People v. Free* (1983), 94 Ill. 2d 378, 422, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 175, 104 S. Ct. 200.) Moreover, we are not persuaded that the brief reference to the fact that the opinions of other nontestifying experts were consistent with those experts who testified was prejudicial.

Defendant's next contention also concerns the testimony of Dr. James Cavanaugh. Dr. Cavanaugh testified that defendant was sane at the time of the offense, not under "extreme emotional distress," and diagnosed defendant as possessing an antisocial personality disorder and being a malingerer. It is defendant's contention that he is entitled to a new sentencing hearing because the circuit court denied him the opportunity to make an offer of proof that Dr. Cavanaugh relied on the report of an unqualified, unlicensed psychologist in forming his own opinion on defendant's mental condition at the time of the offenses. The record shows that defense counsel sought to examine Dr. Cavanaugh outside the presence of the jury to determine the extent of his reliance on the report. The circuit court denied defense counsel's re-

quest and concluded from a review of the doctor's report and Dr. Cavanaugh's direct testimony that the report of the psychologist did not materially affect Dr. Cavanaugh's opinion. The People argue that the issue has been resolved because this court in *People v. Free* (1983), 94 Ill. 2d 378, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 175, 104 S. Ct. 200, found that Dr. Ronald K. Siegel, the psychologist involved, is qualified. (94 Ill. 2d 378, 411.) The circuit court concluded that Dr. Cavanaugh's opinion was not materially affected by Dr. Siegel's allegedly unreliable report. On this record we are unable to say that the circuit court erred in its conclusion.

Defendant contends next that he must be granted a new sentencing hearing because the circuit court, in violation of the statute and defendant's fifth amendment rights, improperly admitted the testimony of psychiatrists who had made a court-ordered examination of defendant. Defendant argues that under the provisions of section 115—6 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 115—6) the testimony was inadmissible unless he sought to raise the defense of insanity and points out that the defense of insanity was withdrawn during the guilt phase of the trial.

In the sentencing hearing defendant called Dr. Edward Senay, who testified that in his opinion defendant was under extreme emotional distress, was unable to conform his conduct to the requirements of the law at the time of the offense, and was suffering from "toxic psychosis." It is the position of the People that the testimony of Drs. Cavanaugh and Rogers, who had examined defendant, was admissible, and as previously noted, they testified in rebuttal that defendant was not suffering from extreme emotional disturbance, was able to conform his conduct to the requirements of the law, was possessed of an antisocial personality disorder, and was

a malingerer. We find no violation of defendant's constitutional rights and conclude that under the authority of *People v. Silagy* (1984), 101 Ill. 2d 147, 174-75, the testimony of Drs. Cavanaugh and Rogers was properly admitted to rebut the testimony of Dr. Senay.

Citing *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, defendant contends next that at the sentencing hearing he was denied the right to confront witnesses when the circuit court erroneously permitted a police officer to testify concerning the statements of defendant's accomplices who had implicated defendant in the 1965 robbery and murder of Fred Christiansen. *Bruton* held that admission at a joint trial of a defendant's extrajudicial confession implicating a codefendant violated the codefendant's right of cross-examination guaranteed by the confrontation clause of the sixth amendment. This court has interpreted *Bruton* and its progeny not to require " 'reversal of a defendant's conviction when the defendant himself has confessed and his confession "interlocks" with and supports the confession of his codefendant.' " (*People v. Davis* (1983), 97 Ill. 2d 1, 21.) Defendant's confession is not only consistent with, but is more detailed than, the statements attributed to his codefendants. In these circumstances, the admission into evidence of the accomplices' statements concerning the 1965 murder did not constitute reversible error.

Defendant contends next that he must be granted a new sentencing hearing because the jury was not instructed that in order to support the finding that there existed the aggravating factor set forth in section 9—1(b)(3) (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(b)(3)), multiple murders occurring as a result of unrelated acts must be premeditated. Alternatively, he contends that he is entitled to a new sentencing hearing because the verdict form finding the existence of that aggravating factor did

not state that the murders for which defendant had been convicted were intentional. Defendant's first argument was considered by this court in *People v. Davis* (1983), 95 Ill. 2d 1, which held that section 9—1(b)(3) does not require premeditated acts, but merely "two or more murders resulting from intentional *or* knowing acts." (95 Ill. 2d 1, 36.) Notwithstanding, the error, if any, was cured by the jury instruction which provided:

> "Before the defendant who has attained the age of eighteen years can be eligible for the death penalty, either or both of the following statutory aggravating factors must be proven beyond a reasonable doubt.
>
> One: ***.
>
> Two: The defendant George Del Vecchio has been convicted of intentionally murdering Anthony Canzoneri and intentionally murdering one Fred Christiansen."

Defendant's alternative argument that the verdict form omitted the word "intentionally" was waived by his failure to object to the form when tendered or to submit an alternative form.

Defendant contends next that the death penalty statute is unconstitutional because it permits the consideration of undefined nonstatutory aggravating factors and thus violates the eighth amendment ban on arbitrary and capricious imposition of the death penalty. In support of his argument defendant cites *Henry v. Wainwright* (5th Cir. 1981), 661 F.2d 56, *vacated and remanded* (1982), 457 U.S. 1114, 73 L. Ed. 2d 1326, 102 S. Ct. 2922, *aff'd on remand* (5th Cir. 1982), 686 F.2d 311, *vacated and remanded* (1983), 463 U.S. 1223, 77 L. Ed. 2d 1407, 103 S. Ct. 3566, *affirmed in part and reversed in part on remand* (5th Cir. 1983), 721 F.2d 990, *cert. denied* (1984), 466 U.S. ___, 80 L. Ed. 2d 846, 104 S. Ct. 2374. In *People v. Free* (1983), 94 Ill. 2d 378, 427, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 175, 104 S. Ct. 200, we distinguished the Florida statute considered in *Henry*

and need not discuss it again.

Defendant next contends that he was denied a fair sentencing hearing where the assistant State's Attorney made insinuations concerning defendant's misconduct and engaged in prejudicial argument not supported by the evidence. In support of his argument he cites *People v. Nuccio* (1969), 43 Ill. 2d 375, in which the judgment was reversed and the cause remanded because the State's Attorney repeatedly insinuated that defendant had previously threatened decedent and some of the prosecution's witnesses, but failed to call those witnesses, some of whom were in the courtroom. We find it unnecessary to enumerate the instances where the assistant State's Attorney in the instant case made these alleged insinuations. The court in *Nuccio* limited its holding to "[w]here, as here, the guilt of the accused is not manifest, but is dependent upon the degree of credibility accorded by the trier of fact to his testimony and that of the witnesses who testify on his behalf ***." (43 Ill. 2d 375, 396.) Given the overwhelming evidence of guilt, we find *Nuccio* inapposite.

Defendant contends next that the assistant State's Attorney improperly argued that the jury was to decide whether to impose the death penalty by determining whether the mitigating or aggravating evidence was greater. He argues that the admonition is contrary to the statute and misinformed the jury of its function. We find it unnecessary to set forth the specific remarks which defendant enumerates because we have determined that the effect of the improper argument, if any, was cured when the circuit court sustained defendant's objections and admonished the jurors that they would be correctly instructed on the law. Prior to retiring for deliberations, the jurors were correctly instructed by the court regarding the law to be applied in the second phase of deliberations. We conclude that the circuit court

took proper steps to insure that the jury properly applied the law to the facts of this case.

We next consider defendant's contention that the People's being given the opportunity to both open and close the final arguments at the sentencing hearing denied him due process. In *People v. Williams* (1983), 97 Ill. 2d 252, 302-03, we considered and rejected this contention, and we decline to reconsider it here.

Defendant next argues that the death penalty is excessive and requests this court to reduce the sentence to a term of imprisonment. Citing *People v. Carlson* (1980), 79 Ill. 2d 564, and *People v. Gleckler* (1980), 82 Ill. 2d 145, defendant argues that this court is obliged to reduce his sentence because his crimes were caused by mental or emotional disturbance. However, both cases are inapposite. *Gleckler* vacated the death sentence which had been imposed on the defendant, one of three persons indicted for the murder, because "Gleckler, with no criminal history, *** was not the ringleader in this sordid affair; nor [were] his rehabilitative prospects demonstrably poorer than those who received imprisonment terms." (82 Ill. 2d 145, 171.) Likewise, in *Carlson*, the court considered as a mitigating factor, *inter alia*, the fact that defendant had no prior criminal background. Given defendant's prior serious criminal history (including murder and robbery) and his sole responsibility for the crime, we do not agree that imposition of the death penalty upon defendant was excessive.

Defendant raises a number of constitutional issues, all of which have been determined adversely to defendant's contentions. Defendant argues that the constitutional requirement of adequate appellate review mandates written, factual findings by the jury. This precise issue was considered in *People v. Gaines* (1981), 88 Ill. 2d 342, 384, *cert. denied* (1982), 456 U.S. 959, 72 L. Ed. 2d 482, 102 S. Ct. 2034, and relying on *People v. Brownell*

(1980), 79 Ill. 2d 508, the court held such findings were not required. Defendant also contends that article I, section 11, of the Illinois Constitution requires that the jury be instructed to consider whether he possessed any rehabilitative potential and because his attorney failed to tender such an instruction, his death sentence should be vacated. In *People v. Gaines* (1981), 88 Ill. 2d 342, 380-83, *cert. denied* (1982), 456 U.S. 959, 72 L. Ed. 2d 482, 102 S. Ct. 2034, this issue was decided adversely to defendant. We have also considered and rejected the argument that the statutory mitigating factor of "extreme mental or emotional disturbance" (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(c)(2)) is both unconstitutionally vague and impermissibly limiting. (*People v. Silagy* (1984), 101 Ill. 2d 147, 163-65.) Defendant has also argued that because the death penalty statute provides no data-gathering procedures for compilation of all capital felony cases, this court is unable to prevent its arbitrary imposition. We have previously considered and rejected this contention. (*People v. Brownell* (1980), 79 Ill. 2d 508, 541-44.) In *Pulley v. Harris* (1984), 465 U.S. 37, 79 L. Ed. 2d 29, 104 S. Ct. 871, the Supreme Court imposed no requirement not met by our present method of review. Defendant contends that the failure of the death penalty statute to require the People to prove beyond a reasonable doubt the absence of mitigating factors sufficient to preclude the death penalty violates due process of law and the eighth amendment. In *People v. Free* (1983), 94 Ill. 2d 378, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 175, 104 S. Ct. 200, we reaffirmed our holding in *People v. Brownell* (1980), 79 Ill. 2d 508, that a unanimous jury, or the court, must weigh the mitigating factors against the aggravating factors and conclude that there are no mitigating factors sufficient to preclude the imposition of the death sentence. We decline the invitation to reconsider the propriety of those holdings.

Defendant, in his supplemental brief, argues that, in violation of the eighth and fourteenth amendments, the circuit court improperly instructed the jury that "[n]either sympathy nor prejudice should influence you." The court gave instructions in the form of Illinois Pattern Jury Instructions (IPI) Criminal, No. 1.01 (2d ed. 1981) (general instructions regarding the functions of the court and the jury), omitting paragraph 4 as recommended by the Illinois Supreme Court Committee for capital cases. Defendant cites *People v. Easley* (1983), 34 Cal. 3d 858, 671 P.2d 813, 196 Cal. Rptr. 309, which held that, although appeals to the sympathy or passions of the jury are inappropriate at the guilt phase, it is necessary that the jury consider the sympathetic elements of defendant's background during the death penalty phase. (34 Cal. 3d 858, 880, 671 P.2d 813, 827, 196 Cal. Rptr. 309, 323.) We are not persuaded that the instruction given was inappropriate and note further that no instruction consistent with defendant's contentions was tendered.

Defendant contends next that the death penalty was imposed in violation of the eighth and fourteenth amendments to the Constitution of the United States. He argues that "the essence of the death penalty decisions of the Supreme Court has been that a constitutionally imposed death sentence requires an individualized sentencing process in which the sentencer will decide whether 'death is the appropriate punishment in a specific case.' " He argues, too, that the jurors, despite finding that mitigation did not outweigh aggravation, may have considered capital punishment inappropriate, but may have felt that they were without discretion to return a verdict other than one imposing the death penalty. He contends that for those reasons the jury, in addition to the finding that mitigation did not outweigh aggravation, should have been required to find that death was the appropriate punishment. He contends, too, that the jury

may have assumed that it was defendant's burden to disprove the suitability of the death sentence. We do not agree. Implicit in the statutory scheme is that the jury should carefully weigh the factors "in order to reach a fair and just result, one that is based on the particular circumstances of the offense and the defendant." (*People v. Brownell* (1980), 79 Ill. 2d 508, 538.) The holding in *Brownell* resolves any question of "appropriateness."

Defendant contends next that after being found eligible for the death sentence, in violation of the eighth and fourteenth amendments he bore the burden of proving that the death penalty was inappropriate. In *People v. Williams* (1983), 97 Ill. 2d 252, 302, we held that at the aggravation and mitigation hearing there is no burden of proof, but, rather, the People have the burden of going forward with the evidence, and we decline to reconsider that holding here.

Finally, defendant asserts that four of the members of this court have previously expressed the opinion that the statute is unconstitutional because it bestows upon the People the sole discretion to determine whether to seek the death penalty, and that this may result in arbitrary application of the statute. (See *People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531, 544 (Ryan, J., Goldenhersh, C.J., and Clark, J., dissenting); *People v. Lewis* (1981), 88 Ill. 2d 129, 179 (Simon, J., dissenting), *cert. denied* (1982), 456 U.S. 1011, 73 L. Ed. 2d 1308, 102 S. Ct. 2307.) Defendant notes that three of the judges filed concurring opinions, relying on *stare decisis*, upholding the constitutionality of the death penalty statute (see *People v. Lewis* (1981), 88 Ill. 2d 129, 165 (Goldenhersh, C.J., concurring), 166 (Ryan, J., concurring), 167 (Clark, J., concurring), *cert. denied* (1982), 456 U.S. 1011, 73 L. Ed. 2d 1308, 102 S. Ct. 2307), and that these opinions were predicated on the assumption that the Supreme Court would review the validity of the statute. The argu-

ment continues that because the Supreme Court has denied *certiorari*, this court is, in effect, the "final tribunal" to determine the statute's validity. Defendant argues that the Supreme Court's denial of *certiorari* in, *inter alia, People v. Lewis* (1981), 88 Ill. 2d 129, *cert. denied* (1982), 456 U.S. 1011, 73 L. Ed. 2d 1308, 102 S. Ct. 2307, requires this court to reconsider the constitutionality of the statute. We do not agree. However, we note parenthetically that there are decisions of this court on which petitions for writs of *certiorari* await consideration. (See *People v. Gacy* (1984), 103 Ill. 2d 1; *People v. Holman* (1984), 103 Ill. 2d 133; *People v. Albanese* (1984), 104 Ill. 2d 504.) As the People note, previous denials of *certiorari* by the Supreme Court do not preclude it from later granting *certiorari*. (*Chessman v. Teets* (1957), 354 U.S. 156, 175-77, 1 L. Ed. 2d 1253, 1265-67, 77 S. Ct. 1127, 1137-38.) In *People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531, *cert. denied* (1979), 445 U.S. 953, 63 L. Ed. 2d 788, 100 S. Ct. 1603, the majority traced the history of the broad discretion enjoyed by the State's Attorney in both the initiation and the management of criminal litigation and determined that such discretion was not unconstitutional. *Cousins* has subsequently been reaffirmed (see, *e.g., People v. Lewis* (1981), 88 Ill. 2d 129, *cert. denied* (1982), 456 U.S. 1011, 73 L. Ed. 2d 1308, 102 S. Ct. 2307), and we decline to reconsider it here.

For the reasons stated, we affirm the judgment of the circuit court of Cook County. The clerk of this court is directed to enter an order fixing Tuesday, September 17, 1985, as the date on which the sentence of death entered by the circuit court is to be executed. The defendant shall be executed by lethal injection in the manner provided by section 119—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 119—5). A certified copy of this order shall be furnished by the

clerk of this court to the Director of Corrections, to the warden of Stateville Correction Center, and to the warden of the institution wherein the defendant is confined.

*Judgment affirmed.*

JUSTICE SIMON, concurring in part and dissenting in part:

I concur in the majority's judgment that the defendant's conviction for murder should be affirmed, but I dissent from the decision to impose the death penalty. For the reasons set forth in my separate opinions in *People v. Lewis* (1981), 88 Ill. 2d 129, 179 (Simon, J., dissenting), in *People v. Silagy* (1984), 101 Ill. 2d 147, 184 (Simon, J., concurring in part and dissenting in part), and in *People v. Albanese* (1984), 104 Ill. 2d 504, 549 (Simon, J., concurring in part and dissenting in part), I have concluded that the Illinois death penalty statute violates the United States and Illinois constitutions.

Moreover, the comments made by the assistant State's Attorney during the sentencing hearing regarding the possibility of parole for the defendant if the jury chose not to impose the death penalty require that the death sentence be reversed. In *People v. Walker* (1982), 91 Ill. 2d 502, 515, this court held:

"Our statute requires that the court or jury, as the case may be, consider aggravating and mitigating factors, which are relevant to the imposition of the death penalty. (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(c).) Whether or not the defendant may, at some future time, be paroled is not a proper aggravating factor to consider in determining whether the death penalty should be imposed."

The majority's attempt to distinguish *Walker* from this case is unpersuasive. Here, as in *Walker*, the prosecution argued that the defendant might be paroled if he received a prison term. Here, as in *Walker*, the trial court overruled objections to this improper argument.

Here, as in *Walker*, the jury may have considered the possibility of parole in determining whether the defendant should be executed, a factor that is not permitted by the Illinois death penalty statute.

As this court said in *Walker*, "[in] a death penalty case, a high standard of procedural accuracy is required in determining whether or not that penalty will be imposed. The procedural errors in this case do not conform to the high standard which must be followed to insure that proper matters are considered in aggravation and that the penalty is applied in as uniform a manner as possible within the framework of an adversary proceeding." 91 Ill. 2d 502, 517.

*California v. Ramos* (1983), 463 U.S. 992, 1005 n.19, 77 L. Ed. 2d 1171, 1183 n.19, 103 S. Ct. 3446, 3454-55 n.19, is not in point. The defendant has not argued here that the United States Constitution prohibits the State from accurately characterizing its sentencing choices. Rather, he has argued that our death penalty statute prohibits the State from raising improper issues in the determination of aggravating factors. Our opinion in *People v. Walker* supports that contention. I would therefore vacate the sentence of death and remand to the trial court for resentencing.