No. 84–7002. DEL VECCHIO v. ILLINOIS. Sup. Ct. Ill. Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Despite this Court's demand "for reliability in the determination that death is the appropriate punishment in a specific case," *Woodson* v. *North Carolina,* 428 U. S. 280, 305 (1976), the Illinois Supreme Court found there to be no error in the admission of two confessions at petitioner's capital sentencing hearing, without any inquiry having been made as to their reliability. Because those confessions had been obtained in connection with charges to which petitioner had long before pleaded guilty, the court found petitioner precluded from challenging their voluntariness later, when he was fighting for his life. Even were I to believe that the death penalty could constitutionally be imposed under certain circumstances, I would grant certiorari in this case to determine whether the Illinois Supreme Court's decision can be reconciled with "the standard of reliability that the Eighth Amendment requires," *Caldwell* v. *Mississippi,* 472 U. S. 320, 341 (1985). See *Bare-*

*foot* v. *Estelle*, 463 U. S. 880, 924–925 (1983) (BLACKMUN, J., dissenting).*

## I

Petitioner George Del Vecchio was convicted in 1979 of murder, rape, deviate sexual assault, and burglary, and the State sought the death penalty. At his capital sentencing hearing, the prosecutor urged as a statutory aggravating factor the fact that in 1965, when he was 16 years old, petitioner had been convicted upon a plea of guilty to charges of murder, robbery, and attempted robbery. The prosecution also sought to introduce two confessions that petitioner had made to those previous crimes; these confessions, made to a police officer and an Assistant District Attorney respectively, contained detailed statements as to petitioner's role in the 1965 crimes. Petitioner moved to suppress these statements at the sentencing hearing on the grounds that they had been induced through physical and psychological coercion and that their use was therefore barred by the Fifth and Fourteenth Amendments. The trial court denied this motion, refusing even to conduct a hearing on it. In his closing argument, the prosecutor pointed to the 1965 confessions as evidence that petitioner was a career criminal who did not deserve to live. The jury proceeded to find two aggravating circumstances and no mitigating circumstances sufficient to preclude a sentence of death. Petitioner was sentenced to die.

In his appeal to the Illinois Supreme Court, petitioner argued that the use of his 1965 confessions without a hearing as to their voluntariness was prejudicial error. The court rejected this claim, concluding:

> "While defendant contests the voluntariness of his inculpatory statement, he does not contend that the guilty plea was involuntarily entered. This court has held that 'a constitutional right, like any other right of an accused, may be waived, and a voluntary plea of guilty waives all errors or irregularities that are not jurisdictional.' (*People* v. *Brown* (1969), 41 Ill.

---

*Petitioner also raises a substantial claim that the prosecutor's summation at trial falsely represented to the jury that petitioner would eventually be eligible for discretionary parole if he were to receive a life sentence. Such inaccurate representations may well have "so affect[ed] the fundamental fairness of the sentencing proceeding as to violate the Eighth Amendment," *Caldwell* v. *Mississippi*, 472 U. S., at 340, and had this Court granted certiorari, this claim would have merited its attention.

2d 503, 505 [, 244 N. E. 2d 159, 160].) Thus, the issue was waived by the voluntary plea of guilty." 105 Ill. 2d 414, 432–433, 475 N. E. 2d 840, 849 (1985).

## II

The Illinois Supreme Court's harsh waiver rule stands in opposition to and must ultimately give way to the constitutional requirement that a defendant facing a death sentence be given an opportunity to challenge the reliability of all evidence urged by the prosecution in support of that sentence. Although this Court has on occasion been divided as to whether this requirement is rooted in the Due Process Clause or the Eighth Amendment, compare *Gardner* v. *Florida,* 430 U. S. 349, 358–360 (1977) (plurality opinion), with *id.,* at 362–364 (WHITE, J., concurring in judgment), a concern for reliability has been one of the central "themes . . . reiterated in our opinions discussing the procedures required by the Constitution in capital sentencing determinations," *Zant* v. *Stephens,* 462 U. S. 862, 884 (1983). See *Barefoot* v. *Estelle, supra,* at 924–925 (BLACKMUN, J., dissenting). This concern is squarely implicated by the introduction of confessions whose voluntariness has never been determined.

The constitutional bar to the use of involuntary confessions in criminal proceedings is based in part upon the "strongly felt attitude of our society that important human values are sacrificed where an agency of government . . . wrings a confession out of an accused against his will," *Blackburn* v. *Alabama,* 361 U. S. 199, 206–207 (1960), and upon "the deep-rooted feeling that the police must obey the law while enforcing the law," *Spano* v. *New York,* 360 U. S. 315, 320 (1959). Equally significant, however, is our awareness of "the probable unreliability of confessions that are obtained in a manner deemed coercive." *Jackson* v. *Denno,* 378 U. S. 368, 386 (1964). And if the "inherent untrustworthiness" of involuntary confessions, *Spano* v. *New York, supra,* at 320, requires their exclusion from the jury during trial, see *Jackson* v. *Denno, supra,* at 383–391, it surely forbids their introduction in a capital sentencing proceeding, where the nature of the punishment faced makes the need for reliable information "of still greater constitutional concern." *Barefoot* v. *Estelle, supra,* at 925 (BLACKMUN, J., dissenting).

That petitioner pleaded guilty to the 1965 crimes and made no effort to contest the voluntariness of his confessions to those

crimes has no bearing on the issue of whether the confessions were coerced. "A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against [him]," *Tollett* v. *Henderson*, 411 U. S. 258, 268 (1973), are all considerations that may have led petitioner to plead guilty even while he had a compelling claim under the Fifth and Fourteenth Amendments. See *Haring* v. *Prosise*, 462 U. S. 306, 318–319 (1983). Nor does the fact that petitioner pleaded guilty establish the truth of the confessions as a whole. Even if the plea constituted an admission of the basic facts comprising the elements of the offenses charged, that admission did not necessarily extend to the truth of other aspects of the confessions. And it is the reliability of those other aspects that is at issue here because it was for them that the prosecutor is likely to have sought admission of the confessions in the first place. Had he wished only to establish petitioner's guilt of the 1965 crimes, he could have merely introduced the 1965 convictions without more.

Respondent argues that regardless of the voluntariness of petitioner's confessions, this Court should not review his claim because the Illinois Supreme Court's decision was based upon a reasonable state procedural rule. However, whether the forfeiture rule applied to preclude petitioner's claim constitutes an adequate state ground is a federal question, and if the rule does not serve a legitimate state interest it "ought not be permitted to bar vindication of important federal rights," *Henry* v. *Mississippi*, 379 U. S. 443, 448 (1965). Once a defendant has pleaded guilty, the State has a legitimate interest in barring him from attacking his conviction collaterally by asserting constitutional claims that would have been adjudicated had he stood trial. Since the plea "represents a break in the chain of events which has preceded it in the criminal process," *Tollett* v. *Henderson, supra,* at 267, this Court has held that such a conviction is based only on the plea itself, and not whatever might have gone before. See *Haring* v. *Prosise, supra,* at 321.

No such state interest supports the extension of the waiver rule to bar an attack, in a subsequent capital sentencing proceeding, on the voluntariness of a confession made by a defendant concerning a crime to which he had previously pleaded guilty. Indeed, were it not for this case, one might have reasonably assumed that a rule so clearly developed to cut off collateral attacks upon a conviction supported by a plea would be applied only in that context. The

Illinois Supreme Court's failure to give any justification for such a radical extension of the rule raises serious questions as to the legitimacy of the state interests implicated. Moreover, any interest the State may have in resolving the voluntariness of a confession soon after the alleged coercion has occurred must in this case be subordinated to the special demand for reliability imposed by the Eighth Amendment. The refusal of the trial court here to inquire into the voluntariness of petitioner's 1965 confessions outside the presence of the jury pursuant to *Jackson* v. *Denno, supra,* was thus error of constitutional magnitude.

Respondent contends that petitioner was not prejudiced by the introduction of the 1965 confessions because this evidence was merely cumulative, the prosecution having already offered evidence of petitioner's conviction and the confessions of two of petitioner's codefendants from that proceeding. But a confession is not merely another aggregate of factual assertions. Even before this Court decided that an involuntary confession could not be admitted at trial, it noted that "such a confession combines the persuasiveness of apparent conclusiveness with what judicial experience shows to be illusory and deceptive evidence." *Stein* v. *New York,* 346 U. S. 156, 192 (1953). What made the introduction of the confessions at petitioner's sentencing hearing so prejudicial is precisely the reason why the prosecution sought their admission: More damning than the information contained in them was the fact that petitioner was heard to tell of his crimes in his own words. Certainly, it cannot be said that the admission of the confessions had "no effect" on the sentencing decision as required by *Caldwell* v. *Mississippi,* 472 U. S., at 341.

Because the trial court here made no effort to determine whether statements so apparently conclusive of petitioner's character had been obtained in a manner that would cast doubt on their trustworthiness, it failed to guarantee the "reliability in the determination that death is the appropriate punishment" that this Court has demanded in capital procedures, *Woodson* v. *North Carolina,* 428 U. S., at 305. I would therefore grant certiorari and vacate petitioner's death sentence.