(No. 50284.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. MILTON BURNS, Appellee.

*Opinion filed April 3, 1979.*

284

William J. Scott, Attorney General, of Springfield, and C. David Vogel, State's Attorney, of Pontiac (Donald B. Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and Robert C. Perry and James G. Condon, of the State's Attorneys Appellate Service Commission, of Springfield, of counsel), for appellant.

Curtis W. Myers, of Pontiac, for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

The defendant, Milton Burns, filed a petition under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1977, ch. 38, par. 122–1 *et seq.*) alleging violation of his constitutional rights to due process and equal protection of the law in his trial, together with a codefendant, in the circuit court of Livingston County, which resulted in his conviction of armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18–2). The petition also alleged a denial of the right to effective assistance of counsel in his appeal to the appellate court from that conviction. (The only ground of appeal

then asserted was that the defendant's sentence, not less than 50 nor more than 150 years, was excessive. In a Rule 23 order (39 Ill. App. 3d 1073), the sentence was reduced by the appellate court to 15 years to 45 years.) At the post-conviction hearing, the circuit court held that the claim in the petition that the prosecution had improperly withheld a police report containing material favorable to the defendant's defense of alibi had been waived because the defendant had not raised the point on his appeal to the appellate court. The circuit court held too that this waiver did not constitute ineffective assistance of counsel on appeal, and denied the petition. The appellate court reversed under a Rule 23 order. (52 Ill. App. 3d 1101.) That court had granted Henry Payne, Jr., the codefendant, a new trial in a separate and earlier appeal from his robbery conviction based upon the same discovery issue the defendant sought to raise in his post-conviction petition, *i.e.* the withholding of the police report. (See *People v. Payne* (1976), 44 Ill. App. 3d 502.) The appellate court said that the defendant was equally affected by the prosecution's failure to provide the police report, and that fundamental fairness required that the defendant also be given a new trial. The court, however, stated that the earlier granting of a new trial to the codefendant on his appeal may have been erroneous because the court through oversight did not consider the applicability of the holding of the Supreme Court in *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392. We granted the People's petition for leave to appeal. 65 Ill. 2d R. 315.

The questions we must consider are whether the defendant was deprived of due process and a fair trial by the prosecution's failure to produce the police report concerned and whether the issue was waived by the defendant's failure to raise it on his direct appeal. In order to be entitled to relief under the Post-Conviction Hearing

Act, it is necessary that the petitioner have suffered "a substantial denial of his rights under the Constitution of the United States or of the State of Illinois" (Ill. Rev. Stat. 1977, ch. 38, par. 122—1). Our review will therefore be limited to constitutional considerations and will not consider the actual scope of discovery under Rule 412 (58 Ill. 2d R. 412).

Under our Rule 412 (58 Ill. 2d R. 412), the defendant and Payne, his codefendant, had filed identical written motions in advance of trial requesting that the People provide:

"The names and last known addresses of persons who[m] the State intends to call as witnesses, together with their relevant written or recorded statements, memoranda containing substantially verbatim reports of their oral statements, and a list of memoranda reporting or summarizing their oral statements, which the State has in its possession or control ***.

&ast; &ast; &ast;

Any material or information within the possession or control of the State, which tends to negate the guilt of the Defendant as to the offense charged in this cause, or which would tend to reduce the Defendant's punishment therefor ***."

The withheld police report included the following statement by investigating officer Curtis Van Note:

"I got a call *** at 7:43 p.m. advising me to go to Simmie's Store, that there had been a robbery there. As I arrived *** Mrs. Hummel *** said two colored subjs. had just held them up at gun point. *** I met Mr. and Mrs. Vincent W. Endres, who were in the store when this took place. Also in the store was Marna Hummel, who works there. These people told me the following ***. The two Negro subjs. are described as follows,

1. 5'7" to 5'8", around 30 years old, heavy set, wearing dark pants and a sweater.

2. 5'8" to 5'9", around 30 years old, 170 to 175 pounds, wearing a full beard and moustache. Had on a dark colored pea coat and dark blue bell bottom trousers.

No one saw the vehicle involved in this nor the direction of travel.

At 9:10 p.m. *** I got a call *** to go back to Hummel's, that they knew the car and could describe it. After returning to the store, Marna said the car was Buick Electra 225, maroon in color. *** [S] he said Joe Ortega had come into the store after we left and wanted to know what happened. She told him and he said I bet it was the same ones that were here Saturday. She then remembered that two colored subjs. had come to the store Saturday and one of them looked inside and then left. She said this was the type of car they were in.

At 11:10 p.m. I got a call to go to the Joe Speedon house as Mrs. Speedon saw the subjects that did this. She said she had been to the store shopping around 7:30 p.m. and as she was leaving two colored subj. were going in. She described them as the people in the store did. The only car she saw was a light green or creamed colored one which was parked just north of the doors. She thought this car had 75 Ill. plates on it. She said there was no one else in the car."

The descriptions of the suspects in the report appear to be composite summaries of oral statements by all four eyewitnesses to the robbery. Of the four, only Marna Hummel was not called to testify at trial. The report's summary of a statement by Marna Hummel seemed to suggest that she believed the robbers were the two persons who had visited the store on the previous Saturday and that the vehicle involved on both occasions was a Buick Electra. When the defendant learned of the existence of the report, which was subsequent to trial but prior to his post-trial motion, a signed statement was obtained from Joe Ortega. In it he said that the defendant and his codefendant, both of whom Ortega had met in the county jail after their trial, were not the men Ortega and Marna Hummel had observed in the store previous to the robbery and who had departed in a brown Buick Electra. While there is a slight inconsistency in the statements by Marna Hummel and Joe Ortega as to the color of the Buick

(maroon or brown), it is not sufficient to overcome the favorable impact their testimony might have had at trial.

A witness for the prosecution was a woman who testified she "cased" the store for the robbers and drove their automobile in the escape. She said the auto used was a blue Pontiac. She was not prosecuted for her claimed participation in the robbery. The witness admitted that at the time she made her statement to the police there was a forgery charge pending against her and that it was later reduced to a charge of deceptive practices.

The Supreme Court in *Brady v. Maryland* (1963), 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97, announced: "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

In *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392, however, the Supreme Court distinguished a specific request for exculpatory information, as *Brady* involved, from a general request which "really gives the prosecutor no better notice than if no request is made." (427 U.S. 97, 106-07, 49 L. Ed. 2d 342, 351, 96 S. Ct. 2392, 2399.) The court used as examples of a general request a request for "all Brady material" or for "anything exculpatory." The court said:

> "The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt

about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." (Footnotes omitted.) 427 U.S. 97, 112-13, 49 L. Ed. 2d 342, 354-55, 96 S. Ct. 2392, 2401-02.

Here the defendant's written pretrial motion for discovery material requested, as to persons whom the State intended to call as witnesses, "memoranda containing substantially verbatim reports of their oral statements, and a list of memoranda reporting or summarizing their oral statements, which the State has in its possession or control." Officer Van Note's report can be considered to have set out a composite summary of oral statements by three persons whom the People called as witnesses. We consider that the request, under these facts, was given with sufficient specificity to warrant application of the *Brady* test, and that the prosecution's failure to provide the report was not harmless error.

Because the defendant was not furnished the report, he was denied the opportunity of questioning the witnesses regarding discrepancies between the composite descriptions, what descriptions each gave the police, what they testified to, and the actual physical characteristics of the defendant and Payne. Offered in conjunction with the testimony at trial by the defendant's three alibi witnesses, evidence of these discrepancies would have been favorable to the defendant and material to the question of his guilt. The report also would have advised him that Marna Hummel had witnessed the robbery and had told the police that the robbers had driven a maroon Buick Electra, which would have contradicted the testimony of the woman accomplice who had said the robbers had driven a blue Pontiac LeMans. Marna might have testified that the

defendant was not one of the robbers. The report would have informed the defendant that Mrs. Speedon may have seen the robbers and she might have testified he was not one of them. Her description of the men observed entering the store matched the composite description, which differed from the actual appearance of the defendant and Payne. Ortega, while his testimony alone under the circumstances might not have been impressive, would also have been available as a witness. In light of the holding of *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, the failure to provide the defendant with the requested information was constitutional error.

Under the circumstances we consider that the doctrine of waiver should not be applied here so as to preclude consideration of the defendant's denial of the report. Of course, an appellate court's determination in the original appeal is ordinarily *res judicata* as to the issues raised, and issues which could have been raised but were not are deemed waived. (*People v. Partin* (1977), 69 Ill. 2d 80, 83; *People v. French* (1970), 46 Ill. 2d 104, 107; *People v. Weaver* (1970), 45 Ill. 2d 136, 138; *People v. Derengowski* (1970), 44 Ill. 2d 476, 479; *People v. Doherty* (1966), 36 Ill. 2d 286, 291; *People v. Agnello* (1966), 35 Ill. 2d 611, 613; *People v. Ashley* (1966), 34 Ill. 2d 402, 408.) This court has nevertheless recognized the need to relax strict application of the waiver rule, where fundamental fairness so requires, in post-conviction proceedings (*People v. Brown* (1972), 52 Ill. 2d 227, 230; *People v. Keagle* (1967), 37 Ill. 2d 96, 101; *People v. Hamby* (1965), 32 Ill. 2d 291, 294), as well as on direct appeal (*People v. Gilbert* (1977), 68 Ill. 2d 252, 258; *People v. Sprinkle* (1963), 27 Ill. 2d 398, 399-400).

The defendant was tried jointly with Payne for the same crime. The two men presented identical discovery motions. Neither gained access to the report until after their trial. The same post-trial motion was filed on behalf

of the two, argued, and denied. The appellate court in awarding the defendant a new trial stated that its failure to consider *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392, may have been erroneous; but as we have stated here, we consider that under *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, a new trial is proper. We judge that fundamental fairness requires that the waiver doctrine should not be applied in the case of the defendant's post-conviction petition.

The appellate court's judgment, which reversed the judgment of the circuit court of Livingston County and remanded the cause with directions that the defendant's conviction and sentence be set aside and that he be awarded a new trial, is affirmed.

*Judgment affirmed.*