(No. 64475.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. GEORGE W. DEL VECCHIO, Appellant.

*Opinion filed June 19, 1989.—Rehearing denied September 29, 1989.*

268

270

WARD and CALVO, JJ., took no part.
CLARK, J., dissenting.

James B. Haddad, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Kenneth T. McCurry and Kevin Sweeney, Assistant State's Attorneys, and Sara Dillery Hynes, Special Assistant State's Attorney, of counsel), for the People.

JUSTICE RYAN delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, George W. Del Vecchio, was convicted of murder, burglary, rape and deviate sexual assault. At the conclusion of the sentencing hearing, the jury found that there existed one or more factors in aggravation set forth in section 9—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(b)) and that there were no mitigating factors sufficient to preclude a sentence of death. The sentence of death was imposed. The defendant was also sentenced to 15 years'

imprisonment for rape, 6 years' for deviate sexual assault, and 7 years' for burglary. On direct appeal to this court (Ill. Const. 1970, art. VI, §4(b); 107 Ill. 2d R. 603), the convictions and sentences were affirmed. (*People v. Del Vecchio* (1985), 105 Ill. 2d 414 (hereinafter referred to as *Del Vecchio I*).) The United States Supreme Court denied the defendant's petition for writ of *certiorari*. (*Del Vecchio v. Illinois* (1985), 474 U.S. 883, 88 L. Ed. 2d 173, 106 S. Ct. 204.) Defendant then filed a petition under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, par. 122—1 *et seq.*), and counsel was appointed. Without an evidentiary hearing, the circuit court granted the State's motion to dismiss the petition. This appeal concerns the correctness of that dismissal.

Defendant was convicted for the December 22, 1977, murder of six-year-old Tony Canzoneri, the rape and deviate sexual assault of Canzoneri's mother and the burglary of their home. The facts relating to the underlying crimes were discussed at length in the first appeal (*Del Vecchio I*, 105 Ill. 2d 414), and we will discuss only the facts relevant to the issues on this review.

Del Vecchio's first claim in his post-conviction petition is that there should be a new trial because the 1979 trial judge, Judge Louis B. Garippo (the trial judge for the 1977 murder of Tony Canzoneri), had a conflict of interest stemming from his involvement in a 1965 case in which Del Vecchio was convicted of the murder of Fred Christiansen. One of the aggravating factors introduced at the penalty hearing in our case was the 1965 murder of Fred Christiansen, of which the defendant was convicted at the age of 16.

The record reflects that in 1979, defendant's defense attorneys learned, during the trial, that Garippo had been present at the defendant's 1965 plea of guilty in the Christiansen murder case. They knew that Judge Garippo had been an assistant State's Attorney, but they

were unaware that he had been chief of the criminal division at that time. Defendant's attorneys prepared a motion for mistrial but, knowing only of the judge's limited involvement, they did not file it, believing that at that late stage in the proceeding the judge would not disqualify himself simply because he had witnessed the 1965 proceedings.

Briefly, the facts surrounding the 1965 conviction are as follows. On February 2, 1965, Del Vecchio was interrogated in connection with the murder of Fred Christiansen. At that time he confessed to the crime. An assistant State's Attorney took a written statement and later prepared a report for his supervisors on the investigation, interrogation and confession. One of the supervisors was Louis Garippo, then the chief of the State's Attorney's criminal division. The Christiansen murder received a good deal of publicity because it represented a new and alarming phenomenon: a robbery spree and a killing by a young person under the influence of drugs. At the time of the murder Del Vecchio was 16 years old and would turn 17 on March 1, 1965, at which age he could be tried as an adult. In mid-February Del Vecchio's attorney went to Garippo and requested an expedited indictment so that Del Vecchio could be sentenced as a youth. Garippo agreed and a grand jury indicted Del Vecchio. On February 24, 1965, Del Vecchio pleaded guilty and was sentenced that day.

The defendant acknowledges that in 1965, upon interrogation, he confessed to the crime and that after the decision to expedite the indictment the State's Attorney's office made no significant decisions in the case. However, he now claims that he was denied a fair trial in 1979 on the murder charge involved in the case before us because of Garippo's involvement with the 1965 prosecution. He speculates that perhaps Judge Garippo regretted his 1965 decision to expedite the indictment.

That decision allowed Del Vecchio to be sentenced as a youth, which presumably helped him obtain an earlier release from prison, and as a result of this early release he was able to perform the subsequent crimes.

Before addressing the issue of judicial disqualification it is important to note that in 1979, Del Vecchio was tried before a jury and that he had a jury sentencing hearing. The jury made the findings that Del Vecchio was death-eligible and the jury determined that the aggravating factors making defendant eligible for the death sentence were present and that there were no mitigating factors sufficient to preclude the imposition of the death penalty. The judge had virtually no role in these decisions.

In a post-conviction proceeding, the petitioner has the burden of proof and must establish a substantial deprivation of rights under the United States Constitution or the Constitution of Illinois before he is entitled to any relief. (*People v. Silagy* (1987), 116 Ill. 2d 357, 365; *People v. Harper* (1969), 43 Ill. 2d 368, 372.) "Dismissal of nonmeritorious petitions on motion is certainly within contemplation of the Act [citation], and necessary to the orderly and expeditious disposition of these petitions." *People v. Collins* (1968), 39 Ill. 2d 286, 288.

The United States Supreme Court has recognized that the issue of judicial disqualification does not necessarily involve a question of constitutional validity. The Supreme Court has stated that "matters of kinship, personal bias, state policy, remoteness of interest would seem generally to be matters merely of legislative discretion. [Citation.] But it certainly violates the 14th Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case." (*Tumey v. Ohio*

(1926), 273 U.S. 510, 523, 71 L. Ed. 749, 754, 47 S. Ct. 437, 441; see *Aetna Life Insurance Co. v. Lavoie* (1986), 475 U.S. 813, 89 L. Ed. 2d 823, 106 S. Ct. 1580; *Ward v. Village of Monroeville* (1972), 409 U.S. 57, 34 L. Ed. 2d 267, 93 S. Ct. 80.) Another guiding principle on the issue of judicial bias is whether the case involves a possible temptation such that the average person, acting as judge, could not hold the balance nice, clear and true between the State and the accused. (*Tumey v. Ohio* (1926), 273 U.S. 510, 532, 71 L. Ed. 749, 758, 47 S. Ct. 437, 444.) Recently, the Supreme Court recognized that only under the most extreme cases would disqualification on the basis of bias or prejudice be constitutionally required. *Aetna Life Insurance Co. v. Lavoie* (1986), 475 U.S. 813, 821, 89 L. Ed. 2d 823, 832, 106 S. Ct. 1580, 1585.

Certainly, Judge Garippo had no pecuniary interest in the matter. However, the defendant points to a number of rulings during the course of the 1979 proceedings that were supposedly prejudicial to him and which indicate Judge Garippo's bias. These rulings cannot be raised now as error because a proceeding under the Post-Conviction Hearing Act is not an appeal, but is a collateral attack on the judgment. (*People v. James* (1986), 111 Ill. 2d 283, 290.) The judgment of the reviewing court on appeal is *res judicata* as to all issues decided, and any claim that could have been presented on direct appeal is, if not presented, thereafter barred under the doctrine of waiver. *People v. Silagy* (1987), 116 Ill. 2d 357, 365.

One of the rulings now claimed to have been prejudicial was the judge's refusal to rule on a pretrial motion that the 1965 evidence was irrelevant to rebut a possible defense of insanity in the 1979 case. Judge Garippo did not rule on the motion, claiming he did not have enough information before trial. In the post-conviction petition the defendant argues Garippo ordered the psychiatrists

to prepare written reports for him before trial and, therefore, he must have had plenty of information on which to base a ruling. Another claimed indication of prejudice is that Judge Garippo stated that Del Vecchio was more worthy of the death penalty than John Gacy, whose case was also on the judge's trial call. (See *People v. Gacy* (1984), 103 Ill. 2d 1.) In an affidavit attached to the State's motion to dismiss the post-conviction petition, Judge Garippo stated that he was not a strong proponent of the death penalty, but that of the three death penalty cases on his docket in 1979-80, based on the psychiatric reports available to him, Gacy was the least likely candidate for the death penalty.

Either of these matters could have been raised on direct appeal. The statement objected to by Del Vecchio was made in 1979 and was made in the presence of his two defense attorneys. At that time, if they felt their client was prejudiced in any way by Judge Garippo's statement, they could have moved for a substitution of judges. Because neither of these issues was raised as error, it is likely that the trial and appellate attorneys did not think the rulings were sufficiently prejudicial to the defendant. Likewise, we are not persuaded that any bias or prejudice on the part of Judge Garippo toward Del Vecchio is shown.

It is also argued that perhaps Judge Garippo violated a rule of this court when he presided over Del Vecchio's case. The Supreme Court, in *Aetna Life Insurance Co. v. Lavoie* (1986), 475 U.S. 813, 828, 89 L. Ed. 2d 823, 837, 106 S. Ct. 1580, 1589, noted that the States are free to impose more rigorous standards for judicial disqualification than those mandated by the due process clause. This court had established, at the time of the defendant's hearing, standards for disqualification due to a prior involvement with the defendant. (73 Ill. 2d R. 67(c).) Supreme Court Rule 67(c) at that time stated:

"A judge shall not participate in any case in which he has previously acted as counsel. He cannot rid himself of this responsibility by consent of counsel or the parties to the case." (73 Ill. 2d R. 67(c).)

This rule did not require that anytime a judge had knowledge of, contact with, or an interest in the case he must recuse himself or his failure to do so would be reversible error. We agree with the holdings of our appellate court to this effect. (See *People v. Lipa* (1982), 109 Ill. App. 3d 610 (the trial judge had been in a supervisory capacity with the State's Attorney's office at the time of the defendant's indictment and had approved a grand jury subpoena in the case); *People v. Burnett* (1979), 73 Ill. App. 3d 750 (the trial judge had been in a supervisory capacity with the State's Attorney's office at the circuit court where defendant's case had previously been pending and where a bond forfeiture hearing had been held).) In *United States ex rel. Link v. Lane* (7th Cir. 1987), 811 F.2d 1166, 1171, the court held that our rule on judicial disqualification did not require a judge to withdraw even though he had previously been involved in the case. In *Link*, the judge had appeared before the grand jury investigating the defendants and had assisted in the preparation of a memorandum. The judge had no recollection of these acts. Trial counsel was aware of the involvement and felt there was no need for recusal.

Merely having a previous involvement with a defendant does not, *per se*, require disqualification. The important phrase is "acted as counsel." Attached to the State's motion to dismiss was the affidavit of Louis Garippo, wherein he explains that the extent of his role in the 1965 murder case was limited to assigning the case to an attorney who had previously been his trial partner at the State's Attorney's office and agreeing, at the request of defense counsel, to expedite the indict-

ment. By no stretch of the term could it be said that this involvement constitutes acting as counsel.

Del Vecchio has presented nothing indicating further involvement in the case other than that Garippo probably received a State's Attorney's report on the interrogation, investigation, and confession; that he was in the courtroom during the guilty plea and sentencing; and that at the time in question, the State's Attorney's office was not very large and Garippo most likely knew the details of the case. Del Vecchio admits that after agreeing to expedite the indictment, the State's Attorney's office had little involvement with the 1965 murder case and that the case received a great deal of publicity. On the basis of the motion to dismiss and the supporting documents, the trial judge granted the State's motion to dismiss the post-conviction petition. We agree that our rule was not violated and that there was no constitutional deprivation. Judge Garippo did not have a direct, personal interest in seeing Del Vecchio punished, nor was he unable to balance the interests between the defense and the State. He did not act as counsel in 1965 such that recusal was required in the 1979 case. In light of his limited role, we find no prejudice to the defendant, no due process violation, and that a new trial is not warranted.

Del Vecchio next requests an evidentiary hearing, contending that his due process rights were violated because a police officer perjured himself at the sentencing hearing in regard to the defendant's drug use. Officer Motzny testified, on cross-examination at the 1979 sentencing hearing, that he had spoken to Mrs. Del Vecchio, the defendant's mother, within hours after the 1965 arrest and that, at that time, she denied any knowledge of her son's drug use. It is contended that the testimony is relevant because one of Del Vecchio's defenses to the 1977 crimes was that he was under the influence of

drugs. The State contested this defense and, instead, characterized him as a malingerer.

A post-conviction petitioner is not entitled to an evidentiary hearing as a matter of right. (*People v. James* (1986), 111 Ill. 2d 283, 291.) A hearing is only allowed if the petitioner makes a substantial showing of a violation of a constitutional right and the allegations are supported by the record in the case or by accompanying affidavits. (*People v. Curtis* (1971), 48 Ill. 2d 25, 27.) Del Vecchio attempts to establish circumstantially that it is implausible his mother would have made such a statement. Two days before the 1965 killing, she provided information for a missing-persons report and she stated that her son used drugs; subsequent to the arrest, she told the press about his drug use; another police officer testified in 1965 that during the interrogation following his arrest, Del Vecchio stated he was on pills; and there were numerous exhibits and testimony documenting his drug use.

At the sentencing hearing in 1979, Officer Motzny stated that Del Vecchio's mother said, after the 1965 arrest, that she had no knowledge about her son's drug use. In the post-conviction petition, Mrs. Del Vecchio's affidavit states that before the 1965 killing, in the missing-persons report, she told the police about her son's drug use and that there "is absolutely no reason why, following the Christiansen killing, I would have denied that George had used drugs. I believe I made no such denial. To the best of my present recollection, I made no such denial." Based upon this, Del Vecchio requests a finding that the officer knowingly committed perjury or an evidentiary hearing on the issue.

The circuit court ruled that an evidentiary hearing was not warranted and granted the motion to dismiss. It reasoned that this was only a small aspect of the consideration in the aggravation and mitigation stage of the

sentencing hearing, that there was ample evidence of the defendant's drug use, and that Mrs. Del Vecchio's affidavit does not clearly establish perjury.

Initially, the State argues that the issue was waived by the failure to raise it on direct appeal. However, where fundamental fairness so requires, this court will relax the waiver doctrine in post-conviction proceedings (*People v. Burns* (1979), 75 Ill. 2d 282, 290; *People v. Hamby* (1968), 39 Ill. 2d 290, 291), and, though it is unusual to grant an evidentiary hearing or a new trial based on such a claim as this, the Post-Conviction Hearing Act has been used to remedy a claim of perjury (*People v. Macias* (1968), 39 Ill. 2d 208, 211-12). One instance where an evidentiary hearing was allowed was in *People v. Cihlar* (1986), 111 Ill. 2d 212, where the defendant located a witness who would testify that the victim stated that the assailant had worn a mask at the time of the crime. The victim's testimony at trial was that the defendant had worn a hairnet and the testimony was the only evidence connecting the defendant with the crime. This court granted an evidentiary hearing, finding that if the conviction were based on this false testimony, due process would be violated.

Alleged perjury does not always rise to a substantial constitutional violation. In *People v. Doherty* (1966), 36 Ill. 2d 286, 289, the petitioner claimed that a police officer perjured himself because there were inherent improbabilities in his testimony and the testimony was contradicted by the petitioner. The court held that the claim fell far short of establishing a substantial denial of a constitutional right. Rather, such matters concern the weight and credibility of the evidence and go to the issue of guilt or innocence. See *People v. Tyner* (1968), 40 Ill. 2d 1, 3; *People v. Orndorff* (1968), 39 Ill. 2d 96, 100.

The alleged perjurious testimony in this case was given in 1979, but related to defendant's 1965, not 1977,

drug use. The testimony referred to one instance where the defendant's mother discussed Del Vecchio's drug use in 1965, and her affidavit now merely states that she believes she would have told the police about her son's drug use. There were numerous references throughout the record that the defendant had used drugs. In fact, Del Vecchio's 1965 confession was admitted through the testimony of the same Officer Motzny, and in it are a number of statements about defendant's drug use. The importance of the 1965 drug use is diminished by the fact that trial counsel did not attempt to bring out from Del Vecchio at the sentencing whether he had used drugs during the 1965 murder, though there was extensive testimony regarding his 1977 drug use, and this issue was not raised on appeal. In any event, there was ample evidence concerning the defendant's drug use such that Officer Motzny's statement does not rise to a constitutional violation requiring a new sentencing hearing or an evidentiary hearing on the post-conviction petition. The inconsistency would, at most, go to the weight and credibility of the witness' testimony.

Del Vecchio next contends that the trial court erred in not granting defendant's request for production of certain documents before it ruled on the State's motion to dismiss the post-conviction petition. First, he requests the missing-persons report issued shortly before the 1965 murder, and the report of Officers Vass and Motzny summarizing their interview with Mrs. Del Vecchio. He claims that these reports may contain information that contradicts Officer Motzny's testimony that Mrs. Del Vecchio did not say her son had been using drugs. Even if the documents show that Mrs. Del Vecchio told the police about the drug use, their production is not warranted, due to our ruling that the officer's inconsistent testimony does not require a new sentencing hearing.

Second, defendant requests disclosure of a memorandum an assistant State's Attorney prepared concerning the investigation, interrogation, and confession of Del Vecchio, and "other documents" relating to Garippo's involvement. Our analysis above shows that Garippo did not act as counsel in the 1965 murder case and the affidavits and exhibits provided by the petitioner and the State show that Garippo's involvement was minor. Judge Garippo's 1979 rulings were upheld on direct appeal and no bias or prejudice is established in reviewing the record of the proceedings. Therefore, there has been no substantial showing of a violation of a constitutional right and an evidentiary hearing is unwarranted. *People v. Silagy* (1987), 116 Ill. 2d 357, 365.

Lastly, the defendant requests the police department "street files." These files are auxiliary records of an investigation kept by police officers. A number of newspapers' reports immediately following defendant's arrest indicate that perhaps Mrs. Canzoneri had been partying with Del Vecchio and had consented to sex with him, and that the defendant was under the influence of narcotics. The defendant believes that the source for these articles was a supervising officer who had spoken to reporters. Defendant claims that the street files may contain information that supports his defense that he was under the influence of controlled substances at the time of his arrest and that Mrs. Canzoneri was not raped. Bolstering this view is the original arrest sheet, which indicated the charges would include drug offenses but not sex offenses, and that the police did not preserve Mrs. Canzoneri's nightgown or bed sheets, which most likely would have been done if rape had been suspected.

As noted, a proceeding under the Post-Conviction Hearing Act is not an appeal, but is a collateral attack on the judgment. (*People v. James* (1986), 111 Ill. 2d 283, 290.) "The purpose of a post-conviction proceeding

is to inquire into the constitutional phases of the original conviction which have not already been adjudicated" (*People v. Williams* (1970), 47 Ill. 2d 1, 3), and the petitioner must make a substantial showing of a violation of a constitutional right (*People v. Silagy* (1987), 116 Ill. 2d 357, 365). The court fails to see what constitutional rights defendant is attempting to raise. Instead, it appears that he is trying to relitigate factual issues that were or should have been litigated at the trial. Del Vecchio was aware in 1977 of these articles and attempted to impeach police officers and Mrs. Canzoneri from these reports, but was unable to do so because the police officer who allegedly was the source of the articles stated that he neither interviewed the victim nor took any notes. Therefore, a post-conviction proceeding is not the proper forum in which to raise this issue. (See *Palmer v. City of Chicago* (1985), 755 F. 2d 560 (street files may be obtained through a properly drafted, specific subpoena).) The judge was correct in not entering a general discovery order prior to ruling on the motion to dismiss. (See *People v. Rose* (1971), 48 Ill. 2d 300, 302.) Also, defendant is not correct in saying that the judge did not permit him to subpoena specific documents before ruling on the motion to dismiss. When asked whether the court's order would include counsel's efforts to "get by subpoena rather than by formal discovery," the court prefaced its answer with "the court says it is up to you." This cannot be construed to be a prohibition by the court of counsel's use of a subpoena to procure desired documents.

The defendant next contends that the prosecutor made improper remarks concerning parole during opening and closing arguments of the sentencing hearing. This same issue was raised in *Del Vecchio I* and defendant again relies on the two statements addressed in that opinion. (105 Ill. 2d at 435-36.) However, in the post-con-

viction petition, the defendant also cites to one statement made during closing argument which, in *Del Vecchio I*, he argued was an improper remark about the victim's family (105 Ill. 2d at 434-35), and to one instance which has not yet been addressed. The one new remark occurred during closing argument, when the prosecution argued:

"Eight years, eight years after he kills Mr. Christiansen and does those other acts, they decide to let him go, he's allowed to walk out, to be put on parole because he's rehabilitated. He's not going to do it anymore. He's got the guards down there and Bible students in his corner back then.

Let him go, he's okay now. What's he do when he's on parole? He's now on parole. He immediately, not immediately starts selling dope.

MR. QUEENEY: Objection to that.

MR. OBBISH: Starts selling various substances.

THE COURT: He may argue.

MR. OBBISH: While he's on parole. That's how much he respects the laws that the rest of us have to follow."

As we stated, the defendant has the burden, under the Post-Conviction Hearing Act, to establish a substantial deprivation of constitutional rights, and determinations of the trial court will not be disturbed unless manifestly erroneous. (*People v. Griffin* (1985), 109 Ill. 2d 293, 303.) Proceedings under the Act are not meant to allow the defendant to relitigate his case. Issues raised on direct appeal are ordinarily *res judicata*, and issues which could have been raised but were not are deemed waived. (*People v. Burns* (1979), 75 Ill. 2d 282, 290.) Though we have recognized the need to relax this rule in a post-conviction petition where fundamental fairness requires (*People v. Hamby* (1968), 39 Ill. 2d 290, 291), we do not believe that under these facts, fundamental fairness mandates further review of this issue. *Del Vecchio I*

relied on sound authority, and the defendant has raised only one new allegedly improper remark and taken another statement that he earlier argued was improper but in a different context. Both could have been raised in the first appeal.

In holding that the statements did not constitute reversible error, *Del Vecchio I* ruled that the assistant State's Attorney accurately described the jury's choices, and distinguished *People v. Walker* (1982), 91 Ill. 2d 502, where the jury clearly was persuaded by the remarks about parole. The court also ruled that Del Vecchio had not been denied a fair trial on constitutional grounds and cited *California v. Ramos* (1983), 463 U.S. 992, 77 L. Ed. 2d 1171, 103 S. Ct. 3446, which found no constitutional violation in accurately characterizing sentencing choices.

Del Vecchio, however, argues that we should address the issue because our holding contradicted a number of earlier Illinois cases and that in *People v. Brisbon* (1985), 106 Ill. 2d 342, the court ruled that *Ramos* was not controlling and prosecutors may not urge death due to the possibility of parole. Therefore, he claims to have been treated disparately from other defendants in violation of his right to due process and equal protection and that arbitrary application of rules of law in death penalty cases violates the prohibition against cruel and unusual punishment.

We must view the propriety of the prosecutor's comments concerning parole from two different perspectives: statutory proscription and constitutional proscription. In *Del Vecchio I*, we analyzed the objections to the comments in light of this court's holding in *People v. Walker* (1982), 91 Ill. 2d 502, and found the remarks distinguishable from those in *Walker* and not error. In *California v. Ramos* (1983), 463 U.S. 992, 1013 n.30, 77 L. Ed. 2d 1171, 1189 n.30, 103 S. Ct. 3446, 3460 n.30, the

Supreme Court considered that our holding in *Walker* was based on our statute, which requires that the court or jury consider the aggravating and mitigating factors which are relevant to the imposition of the death penalty. (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(c).) In *Walker*, we stated that whether a defendant may, at some future time, be paroled is not a proper aggravating factor to consider in determining whether the death penalty should be imposed. (*Walker*, 91 Ill. 2d at 515.) Thus, the holding in *Walker* must be viewed as the Supreme Court viewed it, as being based on a statutory and not a constitutional limitation. In *Del Vecchio I*, in addition to finding the statements not improper in light of *Walker*, we also analyzed the remarks in light of constitutional limitations and, relying on *California v. Ramos*, again found that they were not improper. (105 Ill. 2d at 435-37.) Thus, both the constitutional and statutory challenges to the complained-of remarks were decided in *Del Vecchio I*.

Defendant contends, however, that our holding in *People v. Brisbon* (1985), 106 Ill. 2d 342, must be viewed as overruling our holding on this point in *Del Vecchio I*, and as a return to the test of *People v. Walker* and *People v. Szabo* (1983), 94 Ill. 2d 327. We do not agree. We noted above that in *Del Vecchio I*, we subjected the complained-of remarks to the test of our holding in *Walker*, as well as to the constitutional test. *Brisbon* was also decided by applying the *Walker* test. The fact that different results, based on different facts in different cases, were achieved does not mean that the later case (*Brisbon*) overruled the former (*Del Vecchio I*). The rule in *Del Vecchio I* was not changed by *Brisbon* so that the rule of *Del Vecchio I* would only apply to Del Vecchio, as he now contends, thereby raising constitutional questions of equal protection or due process, or an eighth amendment violation. The rule applied in both *Del Vecchio I*

and *Brisbon* is the same. Different results were achieved under different facts.

The propriety of the remarks concerning parole that are now before us was considered, or could have been considered, in *Del Vecchio I.* We will not relitigate their propriety in this post-conviction action under the guise of a due process, equal protection or eighth amendment violation. The question involved is only that of the construction of our sentencing statute and is not of constitutional dimensions. See *People v. Brisbon* (1985), 106 Ill. 2d 342, 368.

Defendant next contends that his eighth amendment rights were violated because the jury was allowed to hear statements regarding the victims' family during both the guilt-innocence phase and the sentencing phase of his trial. This issue was raised in the direct appeal and the court held that the statements were not prejudicial. (*Del Vecchio I,* 105 Ill. 2d at 434-35.) Ordinarily *res judicata* and waiver would bar consideration of an issue which was raised or could have been raised (*People v. Gaines* (1984), 105 Ill. 2d 79, 87-88), but under certain circumstances, fundamental fairness dictates that we consider the issue (*People v. Hamby* (1968), 39 Ill. 2d 290, 291). Although we ultimately do not accept the defendant's argument, we feel that this issue should be addressed because defendant argues that a recent United States Supreme Court opinion has changed the law applied in *Del Vecchio I* (*Booth v. Maryland* (1987), 482 U.S. 496, 96 L. Ed 2d 440, 107 S. Ct. 2529).

Generally, where testimony respecting the deceased's family "is not elicited incidentally, but is presented in such a manner as to cause the jury to believe it is material, its admission is highly prejudicial and constitutes reversible error unless an objection thereto is sustained and the jury instructed to disregard such evidence." (*People v. Bernette* (1964), 30 Ill. 2d 359, 371.) However,

a new trial is not required every time there is mention of a victim's family because in certain instances that statement may be harmless. (*People v. Simms* (1988), 121 Ill. 2d 259, 269; *People v. Free* (1983), 94 Ill. 2d 378, 414-15.) This court recognizes a distinction between making the jury aware of the family left behind and cases where the prosecution has dwelt upon the deceased's family to the point that the jury could have related that evidence to the defendant's guilt. *People v. Bernette* (1964), 30 Ill. 2d 359, 371.

The references which Del Vecchio claims are improper began during the opening argument of the trial when the prosecutor established the sequence of events on the night of the multiple crimes. He stated that:

> "On December 21st, in the afternoon hours, when Tony was alive and Karen came home after Christmas shopping, Karen and her son sat down and ate, and called a friend of their's named Santo Falcone to go Christmas shopping with them, because two weeks before this happened, two weeks before this crime occurred, Joseph Canzoneri left her, left her to go live with another woman. And on the day of the crime, the other son Joseph Jr. was not living at this house. His bedroom, as shown in the diagram, the second bedroom, unoccupied. Joseph Jr. is an exceptional child and is in a home for special children. On that day the only people that were living in that house were Karen, who slept upstairs, and Tony, who slept in the far bottom bedroom."

The next references came during the beginning of the direct examination of Mrs. Canzoneri. The following ensued:

> "Q. And when you moved in, who moved into the building with you?
>
> A. My ex-husband, Joe, my son Tony, and myself, Joey.
>
> Q. What are the ages of your sons?
>
> A. Eight and seven, six. I'm sorry.

Q. Which one of the sons was eight years old?

A. Joey.

Q. Which son was six?

A. Tony."

Later, in the direct examination of Mrs. Canzoneri, she was asked:

"Q. On December 22nd, 1977, was your husband, Joseph, living with you?

A. No.

Q. And when did he move out of your house?

A. About two weeks previous to that.

Q. How long had you been married to Joseph Canzoneri?

A. Ten years.

Q. Which of your children were living with you on December 21st and 22nd, 1977?

A. Tony.

Q. And where was Joseph?

A. He was in a special school."

Del Vecchio claims that telling the jury that the father had left the family and that the surviving child has a learning disability was improper and that it was done solely to stir the jurors' emotions. We do not find that a new trial is warranted based on these statements. None of these statements were objected to at trial. The prosecutor did not dwell on these facts so that the jury would give special emphasis to them or consider that evidence as material to the defendant's guilt. Though they may have been unnecessary, they were, nonetheless, only incidental references.

The remaining statements were made at the sentencing hearing. During the mitigation and aggravation stage, the prosecuting attorney argued:

"Then it's not bad enough he kills the little boy, he then goes and he rapes the little boy's mother, devastates a second family. Wasn't satisfied with what he did to the

Christiansen family, now there's another family, the Canzoneri family, they're going to suffer too.

Again, the mitigation you must agree that it outweighs this aggravation.

MR. QUEENEY: Objection to this.

THE COURT: Objection sustained, improper statement."

References were again made to the victims' families during the closing arguments of the sentencing hearing. The prosecuting attorney stated:

"Mr. Queeney said he doesn't know how to talk about life and no words could talk about life. Well, Helen Christiansen can tell you about life, she can tell you about the life that she lost, about her husband who was taken out of her family by this man.

And Karen Canzoneri can tell you about life. She can tell you about her little boy that's no longer with her. She can tell you about how this man took the only thing she had left in her life.

\*\*\*

Your children, my children, you can throw away everything else that people have, and children are the most important, and Mr. Queeney says he can't talk about life.

How about the rights of Karen Canzoneri and the rights of Angeline Adams [Tony's grandmother], a woman who lived for that little boy, a woman who lived across the street from her grandson?

Karen Canzoneri now goes through her life with that void that will never be filled. She has a right to have a just verdict."

These statements were largely unobjected to and many were not raised on direct appeal, which is an indication that counsel, both at trial and after combing the record for appeal, did not consider them violative of previous holdings of this court.

We do not agree with defendant's argument that *Booth v. Maryland* (1987), 482 U.S. 496, 96 L. Ed. 2d 440, 107 S. Ct. 2529, changes the law of this State and

makes it improper to use any victim impact testimony at sentencing. In *Booth*, pursuant to a Maryland statute, during the sentencing stage a victim impact statement was read to the jury. The statement contained a description of the emotional trauma suffered by the family, the personal characteristics of the victims, and family members' opinions and characterizations of the crimes and of the defendant. In *Booth*, the particular statement took almost four pages of the Supreme Court opinion to reprint. The Court ruled that admitting the statement was unconstitutional because it placed too great an emphasis on the victim and the family, instead of on the defendant and his behavior.

*Booth* does not establish that any testimony regarding the victim or family is unconstitutional. Rather, it is similar to the view expressed by this court that if the testimony dwells on these factors, there is reversible error. (See *People v. Simms* (1988), 121 Ill. 2d 259.) We do not find that *Booth* changes Illinois law or is controlling in this situation. The testimony elicited from Mrs. Canzoneri did not dwell upon her family as victims similar to the victim impact statement in *Booth*, nor were the statements presented in a manner likely to appeal to the jury's sensitivities. Unlike *People v. Bernette* (1964), 30 Ill. 2d 359, or *People v. Hope* (1986), 116 Ill. 2d 265, there were not numerous references throughout direct testimony and argument to the jury regarding the victim's family. After reviewing *Booth*, we conclude that the holding in that case does not require that we grant defendant a new trial or sentencing hearing.

The defendant next contends that due process was violated because he did not have fair notice that his 1965 murder conviction would later be used to make him death-eligible. First, he argues that *People v. Davis* (1983), 95 Ill. 2d 1, eliminated the statutory requirement of section 9—1(b)(3) of the Criminal Code (Ill. Rev. Stat.

1977, ch. 38, par. 9—1(b)(3)) that separate murders be intentional or premeditated to render defendant eligible for the death penalty. He argues that no jury determined that his 1965 or 1977 murders were premeditated and that it violates due process to apply the *Davis* ruling retroactively to his 1979 sentencing.

The defendant misinterprets the ruling in *Davis*. The court, in *Davis*, only clarified the statutory language which existed in 1977. *Davis* did not "eliminate" anything from the statute. Rather, it reviewed the language and legislative history and concluded that the aggravating factor in section 9—1(b)(3) includes prior murder convictions resulting from intentional or knowing acts as well as those which are premeditated. (*People v. Davis* (1983), 95 Ill. 2d 1, 36; see *People v. Owens* (1984), 102 Ill. 2d 88, 108.) The *Davis* court did not, as Del Vecchio claims, render the phrase "separate premeditated acts" meaningless. Additionally, this argument could have been raised on direct appeal and failure to do so results in waiver.

Next, the defendant argues that the death penalty statute does not allow a murder that occurred before its effective date to be used as a statutory aggravating factor, and that he did not have fair notice that the 1965 crime could make him death-eligible via a 1977 statute. The defendant made this argument at trial and the judge ruled against him. In *Del Vecchio I*, he raised a challenge on different grounds to the use of his 1965 conviction as an aggravating factor. Likewise, he could have challenged its use on this basis. Failure to do so constitutes waiver. Regardless of this waiver, the defendant, in 1965, had ample notice that the murder conviction could be used in some way against him later. Section 2—9(2) of the Juvenile Court Act (Ill. Rev. Stat. 1965, ch. 37, par. 702—9(2)) provided that a conviction under the act may later be used in determining the sentence to be imposed

in a subsequent crime. See *People v. Owens* (1984), 102 Ill. 2d 88, 112-13.

Del Vecchio's last basis for challenging the use of the 1965 murder conviction is that fair notice is violated by using as an aggravating factor a murder which occurred before the defendant reached age 18. The court finds it unnecessary to determine if a murder conviction occurring before the defendant reaches age 18 can be used in the eligibility stage of the sentencing hearing. This issue could have been raised on direct appeal. Furthermore, it involves a question of statutory construction and not a constitutional matter. It cannot be elevated to constitutional magnitude by claiming lack of fair notice. The death penalty statute had not been enacted at the time of the 1965 murder and there had been no construction of the statute consistent with defendant's contention at the time of the 1979 trial.

The defendant next seeks to challenge his 1965 conviction. First, he claims that the confession was involuntary, *Miranda*-violative, and the product of fourth amendment violations. In *Del Vecchio I*, we held that a voluntary plea of guilty waives all errors or irregularities in obtaining that plea that were not jurisdictional (*Del Vecchio*, 105 Ill. 2d at 432-33), and we decline to reconsider that holding.

Second, he argues that his 1965 counsel improperly informed him that if he pleaded guilty as a juvenile he would receive a hearing prior to being transferred to an adult prison facility. Defendant contends that that view was "dead wrong" and contradicted a clear statute that a male convicted as an adult before age 17 and committed to the Youth Commission could automatically be transferred to an adult penitentiary without a hearing. Del Vecchio now claims that his guilty plea is constitutionally infirm and his 1979 death sentence should be vacated. The defendant argues that waiver should not ap-

ply in this situation because the 1979 trial counsel was not aware that Del Vecchio had been promised a hearing before transfer and was thus unable to raise the issue. Counsel explains that he was unaware of the broken promise because he had limited access to the 1965 court file, claiming that the prosecutor improperly took the file.

Attached to the post-conviction petition are the affidavits of the two attorneys who represented Del Vecchio in 1979. They admit having access to the file in 1979, but claim it disappeared before they could make a meaningful review. They did subsequently obtain the file before the 1979 trial, but state they did not have time to thoroughly study it, partly because the lead attorney was on trial on another case. They requested a continuance but were denied.

Though the 1979 attorneys had limited access to the file, they were still able to file three motions to suppress the 1965 confession. Also, they admit that they never spoke to Del Vecchio's 1965 counsel. The affidavit of 1965 counsel states that he earlier litigated this very issue. In 1969, he brought a Federal action to prevent transferring Del Vecchio without a hearing. The action was dismissed for failure to exhaust State remedies. He then filed a State *habeas corpus* action, and the trial court ruled against him. He then drafted a petition to the supreme court to overturn the trial court ruling, but Del Vecchio dismissed him as counsel. Thus, it is clear that there were numerous occasions when this argument was previously raised, and there have been other times when it could have been raised, for example, in 1971 at the resentencing hearing. Moreover, there were other sources for this information besides the 1965 court file. We fail to see how the fact of the temporarily missing file deprived the defendant of a substantial constitutional

right. Regardless of the temporarily missing file, this argument could have been raised earlier.

Del Vecchio next contends that his sixth amendment right to counsel was denied when the trial court ruled that his attorney could not be present at a psychiatric examination. This issue was resolved against the defendant in *People v. Larsen* (1979), 74 Ill. 2d 348, and it is waived by Del Vecchio's failure to raise it on direct appeal (*People v. Silagy* (1987), 116 Ill. 2d·357, 365).

Defendant argues that his sixth amendment right to a jury drawn from a fair cross-section of the community was denied because prosecutors allegedly used peremptory challenges to exclude an "estimated" six black prospective jurors. Defendant gives no explanation as to why this issue was not raised on the original appeal, but is raised now for the first time nearly 10 years after the trial. Matters become more difficult to prove with the passage of time. Prosecutors and defense counsel move on to other positions and are often not available after years have passed. Holding that the defendant has waived this issue by failure to raise it on direct appeal is entirely justified at this late date.

Last, defendant contends that the Illinois death penalty statute is unconstitutional because the State is not required to prove by some burden of proof that death is the appropriate penalty, or that aggravating circumstances outweigh mitigating circumstances. *Res judicata* bars raising this contention in the post-conviction proceeding because this issue was raised in *Del Vecchio*, 105 Ill. 2d at 446, and this court ruled against the defendant. That holding has been affirmed on a number of occasions (*People v. Johnson* (1987), 119 Ill. 2d 119, 151; *People v. Perez* (1985), 108 Ill. 2d 70, 96), and we will not further consider the issue here.

We are aware of the opinion of the United States District Court for the Central District of Illinois, filed April

29, 1989, in the case of the *United States ex rel. Silagy v. Peters* (C.D. Ill. 1989), 713 F. Supp. 1246. In that case the court held the Illinois death penalty statute (Ill. Rev. Stat. 1979, ch. 38, par. 9—1) unconstitutional. In passing on Federal constitutional questions, State courts and lower Federal courts have the same responsibility and occupy the same position. Until the Supreme Court of the United States has spoken, State courts are not precluded from exercising their own judgments on Federal constitutional questions. Because lower Federal courts exercise no appellate jurisdiction over State courts, decisions of lower Federal courts are not conclusive on State courts, except insofar as the decision of the lower Federal court may become the law of the case. *United States ex rel. Lawrence v. Woods* (7th Cir. 1970), 432 F.2d 1072; see also *City of Chicago v. Groffman* (1977), 68 Ill. 2d 112; *People v. Stansberry* (1971), 47 Ill. 2d 541.

For the reasons stated, we find that the circuit court of Cook County did not err in dismissing defendant's petition for post-conviction relief. Therefore, its judgment is affirmed. We hereby direct the clerk of this court to enter an order fixing Tuesday, November 14, 1989, as the date on which the sentence of death entered by the circuit court of Cook County shall be executed. The defendant shall be executed by lethal injection in the manner provided by section 119—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 119—5). A certified copy of this order shall be transmitted by the clerk of this court to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution wherein the defendant is confined.

*Judgment affirmed.*

WARD and CALVO, JJ., took no part in the consideration or decision of this case.

JUSTICE CLARK, dissenting:

I must respectfully dissent because I believe that the trial court judge's failure to recuse himself from this case violated defendant's right to be tried and sentenced by an impartial adjudicator as provided by the due process clause of the fourteenth amendment to the United States Constitution.

The majority's decision that the trial court judge's failure to recuse himself did not violate due process is based upon the court's conclusion that the judge (1) "had no pecuniary interest in the matter" (129 Ill. 2d at 275), and (2) did not make any rulings which indicated that he was biased or prejudiced toward defendant (129 Ill. 2d at 276). However, as I will explain, the majority's narrow analysis of defendant's claim does not comport with the standards established by the United States Supreme Court for assessing whether a judge's participation in a case violated the Federal constitutional right to due process of law.

The Supreme Court has made clear that due process is violated where a judge "has a direct, personal, substantial pecuniary interest" in the case before him. (See *Tumey v. Ohio* (1927), 273 U.S. 510, 523, 71 L. Ed. 749, 754, 47 S. Ct. 437, 441.) However, as the majority recognizes, the Supreme Court has never indicated that such a situation is the only one which would require recusal. (See 129 Ill. 2d at 276-77.) Rather, the Supreme Court has repeatedly stated that due process requires recusal in situations where hearing the case "would offer a possible temptation to the average *** judge to *** lead him not to hold the balance nice, clear and true." (*Tumey*, 273 U.S. at 532, 71 L. Ed. at 758, 47 S. Ct. at 444, quoted in *Aetna Life Insurance Co. v. Lavoie* (1986), 475 U.S. 813, 825, 89 L. Ed. 2d 823, 835, 106 S. Ct. 1580, 1587, and *Ward v. Village of Monroeville*

(1972), 409 U.S. 57, 60, 34 L. Ed. 2d 267, 271, 93 S. Ct. 80, 83.) Furthermore, under the due process clause a judge must recuse himself from hearing a case not only where he is actually prejudiced, but also where his hearing the case would create even the appearance of partiality. As the Court recently explained:

> "The Due Process Clause 'may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way, "justice must satisfy the appearance of justice." ' [*In re*] *Murchison* [(1955), 349 U.S. 133, 136, 99 L. Ed. 942, 946, 75 S. Ct. 623, 625]." *Aetna Life Insurance Co.*, 475 U.S. at 825, 89 L. Ed. 2d at 835, 106 S. Ct. at 1587.

As is apparent from the language of these Supreme Court decisions, the majority's due process analysis should not have ended after the majority concluded that the trial court neither had a pecuniary interest in the case nor made erroneous rulings prejudicial to defendant. Instead, the court must then go on to decide whether the trial court judge's participation in the case created the appearance of partiality.

The majority's reluctance to fully analyze defendant's claim is apparently based upon the majority's statement that "[r]ecently, the Supreme Court recognized that only under the most extreme cases would disqualification *on the basis of bias or prejudice* be constitutionally required." (Emphasis added.) (129 Ill. 2d at 275.) The problem with this statement, however, is that the Supreme Court has never made such a broad recognition. Rather, what the Supreme Court stated in *Aetna Life Insurance Co.* is that:

> "We need not decide whether allegations of bias or prejudice by a judge *of the type we have here* would ever be sufficient under the Due Process Clause to force recusal. Certainly only in the most extreme of cases would

disqualification *on this basis* be constitutionally required." (Emphasis added.) (*Aetna Life Insurance Co.*, 475 U.S. at 821, 89 L. Ed. 2d at 832, 106 S. Ct. at 1585.)

The allegations being referred to by the Court in *Aetna* were that the judge in that case should have recused himself because he had a "general hostility towards insurance companies that were dilatory in paying claims." (*Aetna Life Insurance Co.*, 475 U.S. at 820, 89 L. Ed. 2d at 831, 106 S. Ct. at 1584.) The Court concluded that "allegations of bias and prejudice *on this general basis*, however, are insufficient to establish any constitutional violation." (Emphasis added.) (*Aetna Life Insurance Co.*, 475 U.S. at 821, 89 L. Ed. 2d at 832, 106 S. Ct. at 1585.) Thus, what the Supreme Court recognized was that only in rare instances would a judge be required to recuse himself because he may have a general bias which could be prejudicial to a defendant; not, as the majority believes, that the Constitution only requires recusal on the basis of bias or prejudice in "the most extreme cases."

Defendant's allegations of bias in this case are not of the general type disparaged by the Court in *Aetna*. Rather, as is set forth in the majority's opinion, defendant alleges that the trial court judge participated in the prosecution of a 1965 case in which defendant was convicted of murder. In that 1965 case, defendant, while under interrogation by a police officer and an assistant State's Attorney, confessed that he committed the crime. The trial court judge in the present case was, at that time, chief of the Cook County State's Attorney's criminal division. He was also a supervisor of the assistant State's Attorney who had taken defendant's confession. As the assistant State's Attorney's supervisor, the trial court judge probably received a copy of the assistant State's Attorney's written report of the interrogation, investigation and confession of defendant. The trial court

judge, in his former role, also agreed to expedite the indictment of defendant so that defendant, who was 16 years old at the time of the 1965 murder, could be sentenced as a youth rather than as an adult.

Defendant's 1965 confession and murder conviction both played important roles in the 1979 trial and sentencing hearing. To prevent the confession from being used to impeach defendant's testimony and rebut his possible insanity defense, defendant moved to suppress the confession because it had been involuntary, *Miranda*-violative, and the product of fourth amendment violations. For the same reasons, defendant moved that evidence of his 1965 confession and conviction not be admitted into his sentencing hearing. The trial court judge, however, did not grant either motion.

While it may be true, as the majority states, that the trial court judge's rulings on these motions were correct, or that defendant waived any argument that they were erroneous (129 Ill. 2d at 276, 293), such conclusions are not particularly relevant to the issue of whether the trial court judge's participation in the case presented the appearance of partiality (see *Aetna Life Insurance Co.*, 475 U.S. at 825, 89 L. Ed. 2d at 835, 106 S. Ct. at 1587; *In re Murchison*, 349 U.S. at 136, 99 L. Ed. at 946, 75 S. Ct. at 625). Instead, the relevant inquiry must be whether the trial court judge's participation in defendant's 1965 case could possibly " ' "lead him not to hold the balance nice, clear and true." ' " (*Aetna Life Insurance Co.*, 475 U.S. at 825, 89 L. Ed. 2d at 835, 106 S. Ct. at 1587, quoting *Ward*, 409 U.S. at 60, 34 L. Ed. 2d at 271, 93 S. Ct. at 83; see also *Taylor v. Hayes* (1974), 418 U.S. 488, 501, 41 L. Ed. 2d 897, 909, 94 S. Ct. 2697, 2704.) In light of these principles, I conclude that the trial court judge should have recused himself from the case.

My conclusion is based upon two factors. The first is that the trial court judge was a supervisor of the assistant State's Attorney who had obtained the 1965 confession. As a supervisor, it is likely that in 1965 he received a copy of the report prepared by the assistant State's Attorney describing the interrogation, investigation and confession of defendant. Even if, as supervisor, he had never seen the report, in these circumstances there is at least the appearance that the trial court judge would not be able to make an impartial decision regarding defendant's motions to suppress the confession since the trial court judge (then chief of the State's Attorney's criminal division) supervised the assistant State's Attorney who had actually procured the confession.

The second factor which leads me to conclude that the trial court judge should have recused himself is that he is the one who in 1965 ultimately decided to expedite the indictment which allowed defendant to be sentenced as a juvenile rather than as an adult. This decision, as the majority notes, possibly allowed defendant to be released from prison earlier than if he had been sentenced as an adult, "and as a result of this early release he was able to perform the subsequent crimes." (129 Ill. 2d at 274.) Although it may be, as the majority characterizes it, "speculat[ion]" (129 Ill. 2d at 273), it is not too far fetched to believe that the trial court judge may have regretted his 1965 decision to expedite the indictment. Nor is it far fetched to think that this regret would "offer a possible temptation" to the trial court judge to "not hold the balance nice, clear and true" at either the trial or the sentencing hearing. Though we need not determine whether or not this in fact happened, the mere potential is enough to require recusal.

The majority attempts to bolster its conclusion that defendant's due process rights were not violated by noting that defendant:

"was tried before a jury and that he had a jury sentencing hearing. The jury made the findings that [defendant] was death-eligible and the jury determined that the aggravating factors making defendant eligible for the death sentence were present and that there were no mitigating factors sufficient to preclude the imposition of the death penalty. The judge had virtually no role in these decisions." (129 Ill. 2d at 274.)

As I read this statement, its implication is that even if the trial court judge had been prejudiced, his prejudice had no impact upon defendant's conviction since it was the jury that made all of the factual determinations in the case. Such an assertion, however, is simply not true. Of course the jury made the factual determinations. However, the jury had to make these determinations based upon the evidence which the *judge* allowed into the case. Thus, the trial court judge, through his rulings as to the admissibility of defendant's 1965 confession and conviction, certainly played a major role in the jury's decisions. Likewise, any bias that possibly influenced the trial court judge in making these evidentiary rulings would also have influenced the jury's decisions.

The majority's rather cursory review of defendant's due process claim is particularly disturbing in this case since defendant's life quite literally hangs in the balance. Where a judge has a possible bias or prejudice which could throw off this balance, the due process clause of the fourteenth amendment to the United States Constitution requires that he recuse himself. Because I believe that the trial court judge's participation in the case presented the appearance of partiality, I would reverse and remand for a new trial and therefore respectfully dissent.